892 F.2d 610
 Julia CAMDEN, Petitioner-Appellant,
v.
CIRCUIT COURT OF the SECOND JUDICIAL CIRCUIT, CRAWFORD
COUNTY, ILLINOIS, Honorable Patrick McLaughlin,
and Neil F. Hartigan, Illinois Attorney
General, Respondents-Appellees.
 No. 89-1196.
 United States Court of Appeals,
Seventh Circuit.
 Submitted Sept. 20, 1989.*
Rehearing and Rehearing En Banc Denied Feb. 5, 1990.
Decided Dec. 28, 1989.
Rehearing and Rehearing En Banc Denied Feb. 5, 1990.
 
 Fred Johnson, Robinson, Ill., for petitioner-appellant.
 Nathan P. Maddox, Asst. Atty. Gen., Office of Atty. Gen., Crim. Appeals Div., Springfield, Ill., for respondents-appellees.
 Before WOOD, Jr., POSNER, and COFFEY, Circuit Judges.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 Appellant Julia Camden's state trial on charges of aggravated battery, armed violence, and attempted murder ended on June 28, 1984, when Judge A. Hanby Jones of the Circuit Court of Crawford County, Illinois determined that juror bias required his sua sponte declaration of a mistrial. Camden subsequently moved to bar her reprosecution on the ground that the fifth amendment double jeopardy clause prohibited a second trial.[1] The majority of an Illinois appellate court reversed the trial court's denial of Camden's motion and found that the trial court's mistrial declaration was neither supported by manifest necessity nor consented to by Camden. People v. Camden, 140 Ill.App.3d 480, 488 N.E.2d 1082, 94 Ill.Dec. 835 (5th Dist.1986). In a dissenting opinion, Justice Karns found that Camden had impliedly consented to the trial court's mistrial declaration and that the trial judge did not abuse his discretion. 140 Ill.App.3d at 488-89, 488 N.E.2d at 1087, 94 Ill.Dec. at 840. The Supreme Court of Illinois reversed the appellate court in a unanimous opinion and held that Camden implicitly consented to the mistrial. People v. Camden, 115 Ill.2d 369, 504 N.E.2d 96, 105 Ill.Dec. 227, cert. denied, 481 U.S. 1070, 107 S.Ct. 2464, 95 L.Ed.2d 873 (1987). In finding implied consent in the particular circumstances of this case, the supreme court found that defense counsel did not avail himself of the opportunity to object before or after the declaration of the mistrial. Id. at 378-79, 504 N.E.2d at 99-100, 105 Ill.Dec. at 230-31. Instead, the supreme court noted that defense counsel actively participated in the arrangements for a new trial. We also shall examine these same matters. After exhausting all state court remedies, Camden petitioned the district court for a writ of habeas corpus. The district court denied the writ, and we affirm.[2]
 
 I. FACTUAL BACKGROUND
 
 2
 On June 26, 1984, Camden's trial began on offenses she allegedly committed in a Crawford County, Illinois tavern.[3] At trial, Camden raised the defenses of insanity and diminished capacity by reason of intoxication. A jury was sworn, the State presented its evidence and rested, and the defendant began to present her case-in-chief. During the lunch recess on the third day of trial, one of the jurors informed Sheriff Richard Hunnicutt, the custodian of the jury, that he had misgivings about his personal ability to render an impartial verdict because of his own prior drinking problem. The sheriff immediately reported this incident to the trial judge, who conducted a hearing in his chambers in the presence of Camden, her counsel, and the State's Attorney. The trial judge proceeded to examine Sheriff Hunnicutt and the concerned juror, Donald D. Hatton.
 
 
 3
 Sheriff Hunnicutt testified that he was seated at a table with Hatton and the other jurors when Hatton stated: "I have something I have to tell you that I think you should report. I cannot give an impartial judgment because of my drinking." The sheriff stated that the other jurors overheard "every word" of his conversation with Hatton and discussed Hatton's remarks among themselves.
 
 
 4
 The judge then examined juror Hatton. Hatton testified that he had informed the sheriff during lunch that he might be unable to render an impartial verdict because of a previous drinking problem. Hatton verified the sheriff's statement that the other jurors had overheard their conversation. Hatton also stated that the alternate juror told him, "You're going to stick me yet, aren't you." When the trial judge expressed his concern that Hatton's remarks might have influenced the other jurors, Hatton responded that he "really, honestly couldn't say" what effect his statements had on his fellow jurors. Hatton conceded that his own prejudice might "place a bigger burden on the State than could be overcome."
 
 
 5
 Upon concluding his examination of Hatton, the judge allowed the attorneys to question Hatton. The interrogation of the juror proceeded with queries from the State's Attorney:
 
 
 6
 [STATE'S ATTORNEY]: You're saying that you had a prior drinking problem?
 
 
 7
 [JUROR HATTON]: Yes, definitely. Really did.
 
 
 8
 [STATE'S ATTORNEY]: Why would a prior drinking problem affect your deliberation?
 
 
 9
 [DEFENSE COUNSEL]: Judge, I object. That's just improper. You've conducted your inquiry. We've got our recordTHE COURT: Do you have anyy questions?
 
 
 10
 [DEFENSE COUNSEL]: Absolutely no questions.
 
 
 11
 At the conclusion of Hatton's testimony, the following colloquy between the State's Attorney and defense counsel occurred:
 
 
 12
 [DEFENSE COUNSEL]: Thank you, Mr. Hatton. I think [the State's Attorney] and I ought to talk. It might save the county a lot of money.
 
 
 13
 [STATE'S ATTORNEY]: Put that on the record.
 
 
 14
 [DEFENSE COUNSEL]: Put that on. Ten minutes to talk?
 
 
 15
 THE COURT: Yes, sir.
 
 
 16
 The court took a recess while the State's Attorney and defense counsel had an unreported discussion. Court reconvened and the jury was brought into the courtroom. The judge then informed the jury and counsel that he was declaring a mistrial due to juror bias:
 
 
 17
 THE COURT: All right, ladies and gentlemen of the jury, the Court, at this particular moment, has made the following minutes on its docket: The Court is advised by an officer of this Court that one of the jurors has indicated before other members of the Jury and the Alternate that they [sic] cannot be giving an unbiased verdict or render an unbiased verdict in this cause. And so it is the duty of the Court at this time to declare a mistrial. And this juror and the officer of the Court were both duly sworn by the Court and did testify out of the presence of the Jury. The bond of the Defendant will be continued for a further trial setting. And the jury is now discharged.
 
 
 18
 I want to thank you very much for your kindness and attention. I realize that this has been a long ordeal, but this is one of the main theories that we have here is justice for all. And it would not be fair to all concerned if this juror did continue to sit and the fact that the other jurors heard the statements that he made. I do want to thank you and you are now excused.
 
 
 19
 [DEFENSE COUNSEL]: Thank you ladies and gentlemen; I appreciate it very much.
 
 
 20
 [STATE'S ATTORNEY]: Appreciate your attention.
 
 
 21
 After the judge dismissed the jury, the attorneys discussed a new trial date. Defense counsel conceded that the case might be assigned to a different trial judge and then waived his client's speedy trial rights in response to the assertion by the State's Attorney that Camden had earlier filed a speedy trial demand. At no point during the judge's explanation to the jury of the need to abort the trial did Camden's attorney object to the mistrial declaration. On July 19, 1984, the trial court reset the case by agreement of the parties for a trial to begin on November 13, 1984. Camden first raised her objection to the mistrial declaration on September 11, 1984, by filing a motion to dismiss on the ground that the mistrial had been declared peremptorily, affording defendant no opportunity to object.
 
 
 22
 On appeal from the district court's denial of her petition for a writ of habeas corpus, Camden claims that the magistrate erred in finding that she impliedly consented to the trial court's mistrial declaration. Camden also claims that the magistrate should have conducted an evidentiary hearing on her petition for a writ of habeas corpus and summary judgment motion in order to assess defense counsel's subjective state of mind during the trial court proceedings.[4]
 
 II. DOUBLE JEOPARDY
 
 23
 Camden maintains that a retrial is barred by the double jeopardy clause of the fifth amendment, which is applicable to the states through the fourteenth amendment. Benton v. Maryland, 395 U.S. 784, 787, 89 S.Ct. 2056, 2058, 23 L.Ed.2d 707 (1969). The double jeopardy clause safeguards a criminal defendant's "valued right to have his trial completed by a particular tribunal," as well as the public's interest in "fair trials designed to end in just judgments." Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949); see also United States v. Jorn, 400 U.S. 470, 484, 91 S.Ct. 547, 556, 27 L.Ed.2d 543 (1971); Lovinger v. Circuit Court of the 19th Judicial Circuit, 845 F.2d 739, 743 (7th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 136, 102 L.Ed.2d 108 (1988). The double jeopardy clause bars retrial unless the trial court's mistrial declaration was occasioned by "manifest necessity," United States v. DiFrancesco, 449 U.S. 117, 130, 101 S.Ct. 426, 433, 66 L.Ed.2d 328 (1980) (citing United States v. Perez, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824)), or consented to by the defendant, Oregon v. Kennedy, 456 U.S. 667, 676, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982).
 
 
 24
 Under the manifest necessity standard, a court may declare a mistrial only if a "scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." Jorn, 400 U.S. at 485, 91 S.Ct. at 557. Whether this standard has been met can only be determined on a case-by-case basis, Illinois v. Somerville, 410 U.S. 458, 463, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425 (1973); therefore, application of the double jeopardy clause is neither facile nor routine, DiFrancesco, 449 U.S. at 127, 101 S.Ct. at 432. A trial court's failure to explicitly find manifest necessity or examine alternatives to a mistrial, however, does not render the ruling constitutionally defective so long as the record provides adequate justification for the trial court's ruling. Arizona v. Washington, 434 U.S. 497, 516-17, 98 S.Ct. 824, 835-36, 54 L.Ed.2d 717 (1978); see also United States ex rel. Clauser v. McCevers, 731 F.2d 423, 427 (7th Cir.1984). Generally, trial judges are vested with broad discretion in assessing the propriety of a mistrial declaration. Somerville, 410 U.S. at 462-63, 93 S.Ct. at 1069-70; McCevers, 731 F.2d at 427.[5]
 
 A. CONSENT
 
 25
 When a defendant consents to a mistrial, however, the double jeopardy clause will bar a retrial only if governmental or judicial conduct was intended to goad the defendant into assenting to the mistrial. Oregon v. Kennedy, 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416 (1982); see also Lovinger v. Circuit Court of the 19th Judicial Circuit, 845 F.2d 739, 743 (7th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 136, 102 L.Ed.2d 108 (1988). Because Camden neither requested nor expressly consented to a mistrial, the double jeopardy clause will only permit her retrial if defense counsel's conduct constituted implied consent or if the mistrial decision was supported by manifest necessity. An implied consent to a mistrial has the same effect as an express consent and vitiates any double jeopardy bar to retrial. See United States v. Buljubasic, 808 F.2d 1260, 1265-66 (7th Cir.) (defendant's silence constituted consent when judge proposed mistrial and invited comments), cert. denied, 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987); United States v. Puleo, 817 F.2d 702, 705 (11th Cir.) (defendant failed to take advantage of his opportunity to object to mistrial declaration), cert. denied, 484 U.S. 978, 108 S.Ct. 491, 98 L.Ed.2d 489 (1987); United States v. Smith, 621 F.2d 350, 351-52 (9th Cir.1980) (defense counsel's failure to object to mistrial and his discussion of defendant's retrial amounted to implied consent to court's sua sponte declaration of mistrial), cert. denied, 449 U.S. 1087, 101 S.Ct. 877, 66 L.Ed.2d 813 (1981); United States v. Gordy, 526 F.2d 631, 635 n. 1 (5th Cir.1976) (dictum) (failure to object may constitute consent); United States v. Goldstein, 479 F.2d 1061, 1067 (2d Cir.) (defendants failed to recant previously denied mistrial motion or object, despite opportunity to do so), cert. denied, 414 U.S. 873, 94 S.Ct. 151, 38 L.Ed.2d 113 (1973); Raslich v. Bannan, 273 F.2d 420, 420-21 (6th Cir.1959) (defendant and his attorney "acquiesced in, and in substantial effect consented to," mistrial).
 
 
 26
 The record reveals that Camden and her attorney were afforded a minimal but adequate opportunity to object, albeit in the presence of the jury[6] while the mistrial was being declared. If a trial judge declares a mistrial in the presence of the jury without giving the defendant an adequate opportunity to object, it would of course be unfair to infer consent absent other circumstances indicating acquiescence. See Lovinger, 845 F.2d at 745-46; Puleo, 817 F.2d at 705; Buljubasic, 808 F.2d at 1265-66; Smith, 621 F.2d at 351-52; Goldstein, 479 F.2d at 1067; Henderson v. Wright, 533 F.Supp. 1373, 1376 (D.Me.1982). In the instant case, after the trial judge declared a mistrial, but before he discharged the jury, he stated that there would be a further trial setting. While the trial court's contemplation of a new trial is not conclusive on the issue of double jeopardy, United States v. Scott, 437 U.S. 82, 92, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65 (1978), the court's comments about a mistrial and reference to a second trial should have prompted defense counsel to object if he did not agree with the need for a mistrial or the propriety of a retrial. Instead of immediately objecting or requesting a sidebar and objecting outside the presence of the jury, however, defense counsel chose to remain silent during the whole proceeding, except to thank the jury.
 
 
 27
 Camden's assertion that Lovinger v. Circuit Court of the 19th Judicial Circuit, 845 F.2d 739 (7th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 136, 102 L.Ed.2d 108 (1988), precludes a finding of implied consent is unfounded. The defendant in Lovinger opted for a bench trial in state court on charges of unlawful delivery of cocaine and marijuana. During the State's case-in-chief, the prosecutor was unable to establish a simple chain of custody for its exhibits. Moreover, the State had failed to comply with discovery orders and had purportedly talked to witnesses during recesses in their testimony. Several times during the trial, the trial judge bemoaned the prosecutor's conduct, noting that substantial error was beginning to "creep" into the record. The trial judge, apparently frustrated by the State's pervasive misconduct and concerned that the defendant was not receiving a fair trial, declared a mistrial sua sponte and recused himself from the case. The judge departed the courtroom as he was completing the mistrial declaration. Id. at 742.
 
 
 28
 This court affirmed the trial court's order granting Lovinger's petition for writ of habeas corpus. The petitioner in Lovinger was precluded from objecting to the mistrial declaration by the trial judge's swift departure from the courtroom. Moreover, when the judge in Lovinger declared a mistrial " 'things were going defendant's way, making an inference of assent from silence implausible.' " Id. at 745 (quoting United States v. Buljubasic, 808 F.2d 1260, 1266 (7th Cir.1987)). Defense counsel has not cited any portion of the record supporting his assertion that the trial had been proceeding favorably for Camden. Juror Hatton's revelation of his bias derived from a past affliction does not necessarily indicate that the case was proceeding in Camden's favor. It is obvious from Hatton's remarks, however, that he was unable to render an unbiased verdict and that the judge had to circumnavigate this unanticipated impasse in the proceedings. Hatton could not remain on the jury as "[n]either party has a right to have his case decided by a jury which may be tainted by bias; in these circumstances, 'the public's interest in fair trials designed to end in just judgments' must prevail over the defendant's 'valued right' to have his trial concluded before the first jury impaneled." Arizona v. Washington, 434 U.S. 497, 516, 98 S.Ct. 824, 835, 54 L.Ed.2d 717 (1978) (footnotes omitted) (quoting Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949)).
 
 
 29
 Unlike the situation in Lovinger, the judge at Camden's trial did not flee the courtroom immediately upon declaring a mistrial. After the mistrial was declared, but before the jury dispersed, the judge explained for the record that the witnesses had been sworn and had testified out of the jury's presence. The judge stated that the jury was discharged, but he detained the jurors in court to thank them for their service and to explain the necessity of his ruling. Defense counsel and the State's Attorney both thanked the jurors for their attention before the jurors departed. If defense counsel did not wish to acquiesce in the trial judge's decision to abandon the trial, he should have reserved his expression of gratitude until after he objected to the judge's declaration.
 
 
 30
 Under the circumstances in the present case, the possibility of a mistrial was evident and defense counsel's failure to take advantage of his opportunity to object in any way to the trial court's mistrial declaration amounted to implied consent to the mistrial ruling.[7] After Hatton's comment was reported to the trial judge and he conducted a hearing in chambers with all parties present, the ensuing alternative courses of action should have been evident. The trial judge could only retain Hatton and continue the trial if the jury custodian's report to the judge was unfounded or exaggerated. Because the report of Hatton's bias proved to be accurate, the trial judge could have imposed a less drastic remedy than the declaration of a mistrial, such as seating an alternate in place of juror Hatton, see, e.g., Arizona v. Washington, 434 U.S. 497, 512 n. 31, 98 S.Ct. 824, 834 n. 31, 54 L.Ed.2d 717 (1978); People v. Silagy, 101 Ill.2d 147, 170-71, 461 N.E.2d 415, 426-27, 77 Ill.Dec. 792, 803-04 (1984), or seating a jury of less than twelve upon stipulation of the parties,[8] see People v. Scudieri, 363 Ill. 84, 87, 1 N.E.2d 225, 227 (1936); People v. Burries, 144 Ill.App.3d 138, 140, 494 N.E.2d 750, 752, 98 Ill.Dec. 628, 630 (4th Dist.1986). The alternate juror, however, had promptly voiced his dissatisfaction with being called as a substitute juror. Hatton's remarks were apparently heard and later discussed by all the jurors. All potential remedies to Hatton's revealed bias would have resulted in Hatton's dismissal from the jury. Any advantage that Camden enjoyed from having a member of the jury indelibly biased in her favor would have immediately dissipated upon Hatton's removal. Because the other jurors, including the disgruntled alternate, overheard Hatton's remarks, the trial might have continued, but with a jury possibly biased against Camden. It is likely that if the judge had chosen to proceed with the trial after dismissing Hatton, defense counsel would now contend that the jury was irrevocably tainted by the removal of a juror who had expressed a bias in favor of Camden and the related discussion in the presence of the jury.
 
 
 31
 If the trial judge had substituted the resentful alternate, Camden would now probably claim that she was prejudiced by the court's decision to seat a juror who had expressed a reluctance and resentment to participating in the deliberations before all the other jurors. Furthermore, the trial judge could have reasonably believed that the remaining jurors were contaminated after they heard one of their members confess his bias due to a prior drinking problem in the midst of a trial involving a defense of diminished capacity by reason of intoxication.
 
 
 32
 The record does not suggest in any degree that the court declared a mistrial to give the government a second opportunity to convict because the first attempt was going badly. Cf. Gori v. United States, 367 U.S. 364, 369, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901 (1961) (judge abuses discretion if mistrial declared to provide the prosecution with a more favorable opportunity to convict the accused or to harass the defendant with successive, oppressive prosecutions). Furthermore, there is no evidence of prosecutorial overreaching to secure a mistrial; in fact, defense counsel stymied the interrogation of juror Hatton by strenuously objecting to a pertinent question from the prosecutor and pressing the court to conclude the hearing on juror bias. Defense counsel should have realized that the midtrial revelation of juror bias carried with it the strong possibility of a mistrial. Hence, when a mistrial was declared, it should have come as no surprise.
 
 
 33
 While not conclusive on the issue of implied consent, defense counsel's conduct after the mistrial declaration bolsters our finding that he impliedly consented to the trial court's mistrial ruling. After the mistrial ruling, the State's Attorney immediately sought a setting for Camden's retrial in the belief that Camden had made a speedy-trial demand. Defense counsel responded by waiving any speedy-trial demand and agreeing to a second trial date of November 13, 1984. When the trial judge recused himself, defense counsel filed a motion to substitute the judge to whom the case was then assigned. Defense counsel did not file the motion to bar Camden's reprosecution until more than two months after the mistrial was declared and retrial preparations had been made. If defense counsel harbored a tacit objection to the mistrial declaration and believed that he was caught unaware and had no opportunity to make a timely objection, he should have made an adequate record immediately after the trial judge's ruling and the dismissal of the jury. Camden's trial would not have been salvaged thereby, but defense counsel would have provided some support in the record for his present claim that he disagreed with the need for a mistrial. Instead, defense counsel actively assisted in arranging his client's retrial.
 
 
 34
 The unique circumstances of this case strongly support our finding that defense counsel impliedly consented to the trial judge's mistrial declaration. Defense counsel should have anticipated the possibility of a mistrial and been prepared to object or suggest more acceptable alternatives when the trial judge announced his ruling. Of course, defense counsel's decision not to move initially for a mistrial would be expected if he perceived some advantage in having a juror with a prior drinking problem on the jury. Defense counsel concedes that he viewed these circumstances as an opportune juncture to attempt to negotiate a plea agreement. Defense counsel's request for a plea negotiation, which was unsuccessful, demonstrates his realization that a new trial was likely. At no time did Camden or her counsel object to the mistrial declaration. Camden's attorney was not obliged to engage in any prejudicial histrionics to object effectively to the trial court's mistrial declaration. Defense counsel merely had to rise in a respectful manner prior to the dispersal of the jury and indicate his objection to the mistrial. If defense counsel was dissatisfied with the trial judge's resolution of the problem, he should have at least requested a sidebar to voice his objection or suggest an alternative solution. He made no record suggesting that there was any objection to what was happening. Defense counsel cannot now avoid a second trial with a double jeopardy argument and thereby profit from a failure to act. All of defense counsel's actions or lack thereof clearly demonstrate that the double jeopardy argument was merely an afterthought that took form long after the first trial ended in a mistrial. Defense counsel cannot now manipulate the events at Camden's trial to obscure his original implied consent to the mistrial declaration. This court therefore finds that Camden impliedly consented to the trial court's sua sponte mistrial declaration.[9]
 
 III. NEED FOR AN EVIDENTIARY HEARING
 
 35
 Finally, Camden asserts that the magistrate erred by ruling on Camden's petition for a writ of habeas corpus and summary judgment motion without conducting an evidentiary hearing. Significantly, defense counsel failed to request a hearing for either the summary judgment motion or the habeas petition.[10] The disputed question of fact that Camden believes justified a hearing involved defense counsel's "unexpressed subjective thoughts" at the time of the mistrial proceedings. The magistrate evidently found that holding a hearing to examine defense counsel's erstwhile cogitations would not aid the court's decision making. This court likewise finds that defense counsel's state of mind had no bearing on the merits of either the summary judgment motion or the petition for a writ of habeas corpus. Counsel's failure to object was sufficient evidence of implied consent to the mistrial declaration; there was no need to delve into defense counsel's psyche. We have the record of what in fact happened. In any event, this court previously has ruled that a dispute over the application of a constitutional principle to a historic fact, rather than a dispute over the fact itself, is not the type of "issue of fact" that requires the holding of an evidentiary hearing. Sutton v. Lash, 576 F.2d 738, 745 (7th Cir.1978) (citing Townsend v. Sain, 372 U.S. 293, 309, 83 S.Ct. 745, 755, 9 L.Ed.2d 770 (1963)); see also Cartee v. Nix, 803 F.2d 296, 298-99 (7th Cir.1986) (if state fact-finding procedures in postconviction proceedings provide defendant with a full and fair hearing, district court does not abuse its discretion when it declines to hold evidentiary hearing on habeas petition), cert. denied, 480 U.S. 938, 107 S.Ct. 1584, 94 L.Ed.2d 774 (1987). Camden's attorney does not dispute the pertinent facts that the magistrate relied on when denying Camden's summary judgment motion and habeas corpus petition. Rather, defense counsel disputes allegations in an affidavit filed by the State's Attorney regarding defense counsel's state of mind. Counsel should have moved to strike any matter in the affidavit not made on personal knowledge and inadmissible as evidence. See Fed.R.Civ.P. 56(e); see also Pfeil v. Rogers, 757 F.2d 850, 862 (7th Cir.1985) (trial court properly excluded unsupported suspicion and argumentation that lacked foundation in the record), cert. denied, 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986). It is apparent from the order denying Camden's summary judgment motion, however, that the magistrate did not rely on that portion of the Anderson affidavit purporting to reveal defense counsel's private thoughts.
 
 IV. CONCLUSION
 
 36
 This court finds that Camden impliedly consented to the trial court's mistrial declaration by failing to object despite having a brief but adequate opportunity to do so. The magistrate's decision denying Camden's petition for a writ of habeas corpus is therefore AFFIRMED.
 
 
 37
 POSNER, Circuit Judge, dissenting.
 
 
 38
 Julia Camden was on trial in an Illinois state court for attempted murder and other offenses committed in a tavern; one of her defenses was diminished capacity by reason of intoxication. At a lunch recess during the third day of the trial, juror Hatton told the sheriff (the custodian of the jury) that he didn't think he could render an impartial verdict, because of his own former drinking problem. The entire jury, including the alternate, was sitting at a table when Hatton made his declaration, and the other jurors not only heard it but discussed it. The alternate remarked to Hatton, "You're going to stick me yet, aren't you."
 
 
 39
 The sheriff reported the incident to the judge. After examining the sheriff and Hatton in the presence of the prosecutor and the defense counsel, and eliciting Hatton's acknowledgment that his prejudice might "place a bigger burden on the State than what could be overcome," the judge reconvened the jury and informed it that because "one of the jurors has indicated before other members of the Jury and the Alternate that they cannot ... render an unbiased verdict ..., it is the duty of the Court at this time to declare a mistrial.... And this Jury is now discharged.... I do want to thank you and you are now excused."
 
 
 40
 The majority holds that because defense counsel did not object to the judge's declaring a mistrial and afterward discussed with prosecutor and judge possible dates for a retrial, Camden gave her implied consent to the mistrial and therefore cannot complain that she will be placed in double jeopardy if forced to undergo a new trial. Although the question is close, I am not persuaded that there was consent. Camden's lawyer had no reason to consent to a mistrial, since Hatton's revealed bias was in favor of the defense rather than of the prosecution. Also and more important, he had no reasonable opportunity to object to a mistrial; therefore no inference of consent can be drawn from his failure to object.
 
 
 41
 The first he learned of the judge's intention to declare a mistrial was when the judge declared the mistrial and excused the jurors. The lawyer could hardly have been expected to interrupt the judge while he was addressing the jury and say, "Wait a minute, judge, I don't want a mistrial." And once the judge had thanked the jurors and told them that they were excused and could go home, the lawyer could not jump up and say, "Wait a minute, judge, don't let them go." And after they were gone he could not shout, "Bring them back! Bring them back!" United States v. Sanders, 591 F.2d 1293, 1298 (9th Cir.1979). We should not require defense counsel, on pain of sacrificing a client's constitutional right, to make futile gestures--gestures that cannot lead to the rectification of error, because they come too late. It is true that "if a judge should say, 'I think a mistrial would be a good idea, but think this over and let me you know if you disagree', the defendant's silence would be assent." United States v. Buljubasic, 808 F.2d 1260, 1265-66 (7th Cir.1987). But the judge said no such thing here. He created no space in which to make an objection. The purpose of requiring lawyers to make objections is to prevent lawyers from sandbagging judges: the judge must be given a chance to correct his mistake. Once the mistake has become irrevocable, an objection serves no purpose.
 
 
 42
 The majority appears to believe that the mistake (if that is what it was--a separate question which I take up later) was not irrevocable until the jurors actually departed. After the judge told them they were excused, there was an interval--how long or short a one we do not know--during which the jurors were still in the courtroom, or certainly in the courthouse; and the majority believes that Camden's counsel could and should have objected during that interval, and asked the judge to reconsider his ruling. Can a jury, once discharged, be recalled? Authority is sparse on the question. Sanders suggests not, 591 F.2d at 1298, but without discussion, and I prefer the practical approach taken in Summers v. United States, 11 F.2d 583 (4th Cir.1926). The jury "may remain undischarged and retain its functions, though discharge may have been spoken by the court, if, after such announcement, it remains an undispersed unit, within control of the court, with no opportunity to mingle with or discuss the case with others, and particularly where, as here, the very case upon which it has been impaneled is still under discussion by the court, without the intervention of any other business." Id. at 586; cf. United States v. Josefik, 753 F.2d 585, 587 (7th Cir.1985). So we may assume there was a brief interval during which the jury could have been recalled if the defendant's counsel had objected to the mistrial and the judge had acceded to the objection. But in holding that the failure to make an objection in this interval forfeits the client's constitutional right not to be placed twice in jeopardy for the same criminal charge, the majority is asking too much of defense counsel. It is of course true that objections not made are waived, and that often--in deciding for example whether to object to a question asked of a witness--counsel may have only a second in which to make up his mind. The situation is different when the judge unexpectedly declares a mistrial and excuses the jury. Counsel is naturally reluctant to risk antagonizing the jury by asking the judge to recall it and to risk antagonizing the judge by arguing with him in front of the jury. This problem is now widely recognized in other contexts. See Fed.R.Evid. 614(c) and Note of Advisory Committee thereto; 3A Wright, Federal Practice and Procedure: Criminal § 842, at p. 289 (2d ed. 1982). And the making of such an argument, followed by the judge's recalling the jury, would in all likelihood so befuddle the jury as to make it incapable of continuing.
 
 
 43
 I acknowledge that the cases cited by the majority, in particular United States v. Smith, 621 F.2d 350, 352 (9th Cir.1980), and United States v. Puleo, 817 F.2d 702, 705 (11th Cir.1987), go far toward inferring implied consent from silence in circumstances not unlike those of the present case. Behind these cases may lie a concern with the strategic employment of silence. Maybe the trial was going badly for Camden, and her lawyer wanted a mistrial so that he could take a crack at another jury. But the state does not argue this, and the cases on which the majority relies are distinguishable. In Puleo the court found "forewarning" of the mistrial, which my brethren do not find in this case, while in Smith there was a lengthy interval between the declaration of the mistrial and the discharge of the jury during which defense counsel could have but did not request the judge to reconsider his ruling. The present case goes further than any previous one; it makes consent a fiction.
 
 
 44
 There is an argument in favor of fictionalizing consent. The objection to the mistrial gives the judge a warning that he had better justify the mistrial under the "manifest necessity" standard, for otherwise there can be no retrial without violating the double jeopardy clause. Even if the objection comes too late to enable the mistrial to be rescinded, it need not come too late to enable the judge to make the kind of record that I am about to argue he failed to make here. But the majority does not mention this argument for requiring a belated objection.
 
 
 45
 Having found implied consent, the majority does not feel obliged to consider the state's alternative ground, that of "manifest necessity," but I must do so because of the view that I take of the case. Under the rubric of "manifest necessity," if a mistrial to which the defense does not consent is declared because there is no way the trial can continue, the defendant can be retried, without any violation of the double jeopardy clause, whether or not he consented to the mistrial. Traditionally though not invariably, this exception to the rule that successive trials place a defendant in double jeopardy was narrowly, although not literally, construed. The impossibility of continuing with the trial had to be "imperious," Downum v. United States, 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100 (1963); see also United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824); United States v. Jorn, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) (plurality opinion), but the relevant impossibility was not that of continuing with the trial but that of continuing with a trial that would be a fair trial--fair to the prosecution as well as to the defense. The most common and least exceptionable example of manifest necessity was where the jury had hung. By a short extension, manifest necessity was found in cases where the jury was incapable of impartial adjudication. Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891); Thompson v. United States, 155 U.S. 271, 273-74, 15 S.Ct. 73, 73-74, 39 L.Ed. 146 (1894).
 
 
 46
 The trial judge in the present case did not make, or at least did not articulate, a determination that a mistrial was necessary. Ordinarily when a juror reveals bias that requires his removal, he is replaced by an alternate juror and the trial continues; there is no manifest necessity--no necessity of any kind--to abort the trial. The fact that juror Hatton went public with his declaration of bias and that the alternate may have resented being called on to replace him may, as in Simmons, have so contaminated the jury as to preclude a fair trial, and if this were clear the trial judge's failure to intone "manifest necessity" would not be fatal. Arizona v. Washington, 434 U.S. 497, 517, 98 S.Ct. 824, 836, 54 L.Ed.2d 717 (1978); United States v. Grasso, 600 F.2d 342 (2d Cir.1979). It is not clear. The trial judge made no inquiry into the extent, if any, to which the jury had been poisoned, beyond ascertaining that they had heard Hatton's comment. He did not interview the jurors (it was from the sheriff that he learned that the other jurors had heard Hatton), or make any effort to determine whether the alternate's statement ("You're going to stick me yet, aren't you") was uttered resentfully, or, as is equally plausible, jocularly. In Thompson, only one juror was disqualified, but so far as appears there was no alternate to replace him, so the jury had to be discharged. Here there was an alternate, and it is merest speculation that he could not have participated fairly or that the other jurors had been contaminated by overhearing Hatton.
 
 
 47
 As an original matter, therefore, I would have little doubt that there was no "manifest necessity" for a mistrial here--that, in other words, the necessity for a mistrial had not been shown, although it may have existed. But Arizona v. Washington, while purporting to retain the "manifest necessity" standard, so emphasizes the discretion of the trial judge, the haste with which he must act, the inessentiality of findings, etc., that little scope remains for appellate review of the judge's determination that a mistrial was unavoidable. See also United States v. Grasso, supra; United States v. Shaw, 829 F.2d 714, 720 (9th Cir.1987); United States v. Jarvis, 792 F.2d 767 (9th Cir.1986). I fear that our decision in Lovinger v. Circuit Court, 845 F.2d 739, 745 (7th Cir.1988), while following the lead of the Supreme Court's plurality opinion in United States v. Jorn, supra, 400 U.S. at 487, 91 S.Ct. at 558, in requiring that the judge weigh the defendant's interest in finality (there is no indication he did that here), is inconsistent with Arizona v. Washington--a majority opinion that post-dates Jorn although it predates Lovinger. Even though the necessity to abort Camden's trial has not been shown, it may be that to find a violation of the double jeopardy clause we must go further and find that the judge was acting irrationally in granting a mistrial. Arizona v. Washington, supra, 434 U.S. at 514, 98 S.Ct. at 834. The approving discussion in Arizona v. Washington, supra, 434 U.S. at 512, 98 S.Ct. at 833, of Simmons, where the judge declared a mistrial on the basis of a newspaper article without inquiring into the article's effect on the jury's ability to render a fair verdict, is a further indication that the burden of showing that a mistrial was unnecessary is a heavy one.
 
 
 48
 Yet to find manifest necessity in the present case would go beyond the precedents, for in Simmons it was the defendant's lawyer who had given the story to the newspaper; in a sense the defendant was the author of the mistrial and, if so, he should not benefit from it. The precipitancy with which the trial judge in the present case acted without explanation or further inquiry in the face of a possibly trivial incident that required the discharge of one juror but was unlikely to have poisoned the rest of the jury (with the possible, essential, but speculative exception of the alternate) negates an inference of manifest necessity.
 
 
 49
 Camden is entitled to her freedom.
 
 
 
 *
 This case was originally set for oral argument. The parties subsequently moved to waive oral argument. We granted that motion and the case was submitted on the briefs and record
 
 
 [1]
 The fifth amendment provides: "No person shall ... be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. CONST. amend. V. Jeopardy attaches in a jury trial when the jury is impaneled and sworn, Downum v. United States, 372 U.S. 734, 737-38, 83 S.Ct. 1033, 1035, 10 L.Ed.2d 100 (1963), and in a bench trial when the judge begins to hear the evidence, Serfass v. United States, 420 U.S. 377, 388-89, 95 S.Ct. 1055, 1062-63, 43 L.Ed.2d 265 (1975)
 
 
 [2]
 Pursuant to 28 U.S.C. § 636(c), the parties consented to the entry of final judgment by a United States magistrate
 
 
 [3]
 On the evening of July 21, 1983, Ivan L. York, the victim of Camden's attack, was seated at a table in the Saloon, a tavern in Robinson, Illinois, with Kevin Pethel and Pethel's mother. At approximately 10 p.m., Kevin Pethel and York hastened to another tavern. After their departure, Julia Camden arrived at the Saloon and asked Mrs. Pethel if York was accompanied by a particular female patron of the Saloon on his tippling excursion. Mrs. Pethel denied that York had left the Saloon with a woman
 York returned to the Saloon at approximately 11 p.m. and resumed his conviviality with Kevin and Mrs. Pethel. Shortly thereafter, Camden approached York from behind, leaned over, and stated: "I hope that you have enjoyed yourself." Camden concluded her discourse by shooting York in the abdomen and quickly exiting the Saloon. When Camden was later arrested, a .22-caliber pistol was found in her purse. Prior to trial, Camden filed a statement of facts admitting the factual allegations contained in the information but denying that she acted with the requisite mens rea.
 
 
 [4]
 Camden's claim that the magistrate granted summary judgment in appellees' favor is erroneous. The magistrate's order dated December 20, 1988, and the judgment entered on December 22, 1988, merely denied Camden's motion for summary judgment and her petition for a writ of habeas corpus. Furthermore, appellees never filed a cross-motion for summary judgment
 
 
 [5]
 A trial judge's manifest necessity evaluation in cases of jury deadlock or juror bias is entitled to greater deference because the determination is based on such factors as the judge's observation of the jurors during voir dire, his familiarity with the evidence, the background of the case on trial, and the tone of the argument delivered and its effect on the jurors. Washington, 434 U.S. at 510 n. 28, 513-14, 98 S.Ct. at 832-33 n. 28, 832. Less deference is accorded to a trial judge's manifest necessity evaluation when the record suggests that bad-faith conduct by the judge or prosecutor may have prompted the mistrial declaration. The Washington Court noted that
 the strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence, or when there is reason to believe that the prosecutor is using the superior resources of the State to harass or to achieve an advantage over the accused.
 Id. at 508, 98 S.Ct. at 831 (footnotes omitted); see also United States v. Dinitz, 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976); Jorn, 400 U.S. at 485, 91 S.Ct. at 557.
 
 
 [6]
 The jury's presence during the judge's mistrial declaration does not foreclose a finding that Camden had an adequate opportunity to object to a mistrial. If defense counsel objects to a mistrial declaration prompted by a judge's finding of juror bias, he does not risk offending the trier of fact, which could occur if the mistrial was prompted by a deadlocked jury. See Henderson v. Wright, 533 F.Supp. 1373, 1376 (D.Me.1982). When defense counsel objects in the jury's presence after a mistrial declaration due to jury deadlock, he endures the risk that the jury will hold him responsible for compelling them to continue deliberations contrary to the opinion of both judge and jury. If defense counsel objects to a mistrial declaration based on the trial court's finding of juror bias, however, he merely informs the court and the jury of his confidence in the jury's ability to reach an unbiased verdict
 
 
 [7]
 Defense counsel's actions after the mistrial had been declared and the jury had dispersed could not alone support a finding of implied consent. While the mistrial declaration alone was not a talismanic utterance, the discharge and dispersal of the jury rendered the mistrial a fait accompli. Once the jury is discharged and has dispersed, a trial court is unable to reconsider its intention to declare a mistrial. See United States v. Smith, 621 F.2d 350, 352 n. 2 (9th Cir.1980) (defense counsel's statements and silences after declaration of mistrial but before discharge of jury constituted implied consent), cert. denied, 449 U.S. 1087, 101 S.Ct. 877, 66 L.Ed.2d 813 (1981); United States v. Estremera, 531 F.2d 1103, 1109-10 (2d Cir.) (The trial court granted defendant's mistrial motion. The defendant then withdrew the motion before the jury was actually excused and the trial proceeded. Conviction affirmed.), cert. denied, 425 U.S. 979, 96 S.Ct. 2184, 48 L.Ed.2d 804 (1976); Scott v. United States, 202 F.2d 354, 355-56 (D.C.Cir.) (defense counsel faulted for failing to object during the interval between the court's mistrial declaration and the actual dismissal of the jurors, after which it was "too late for his objection to be effective"), cert. denied, 344 U.S. 881, 73 S.Ct. 180, 97 L.Ed. 682 (1952). Here, the opportunity to salvage Camden's trial by objecting to the mistrial declaration terminated upon the dismissal of the jury. Nonetheless, defense counsel's active assistance in arranging Camden's retrial and his failure to object on the record even after the mistrial declaration and dispersal of the jury provide strong evidence that his silence during the mistrial declaration constituted agreement that a mistrial was necessary
 
 
 [8]
 Proceeding by agreement of the parties with a jury of less than twelve would not likely be an attractive option to a defendant who might prefer to select a new jury after hearing the government's entire case presented in the first trial. In a second trial, defense counsel would have the opportunity to revise his opening statement and reconsider his cross-examination of government witnesses. In all events, Camden's counsel neither objected to the trial judge's selection of the mistrial option nor suggested a more acceptable alternative
 
 
 [9]
 While it is doubtful that manifest necessity supported the mistrial declaration, we need not determine whether the trial court's action was supported by manifest necessity because we have determined that Camden impliedly consented to the mistrial
 
 
 [10]
 Local Rule 7(c) of the Local Rules for the Southern District of Illinois provides in pertinent part that "[a]ny party desiring oral argument [on a motion] shall make appropriate note thereof upon the cover page of his brief. The Court may, in its discretion, rule on the motion without oral argument." District courts have considerable discretion in interpreting and applying their own local rules. See Max M. v. New Trier High School Dist. No. 203, 859 F.2d 1297, 1300-01 (7th Cir.1988); Congregation of the Passion v. Touche, Ross & Co., 854 F.2d 219, 223 (7th Cir.1988). There was no request for a hearing anywhere in the briefs Camden filed with the district court