11-1981-cr (L)
United States v. Toscano

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 13th day of June, two thousand twelve.

Present:
>        PETER W. HALL
>        SUSAN L. CARNEY,
>                *Circuit Judges.*
>        SHIRA A. SCHEINDLIN
>                District Judge.[*]

---

United States of America,
>        *Appellee*,

>        v.

Christopher H. Monfort, Timothy M. Stone a/k/a Tim Bob,

>        *Defendants*,

No.    11-1981-cr(L)
        11-1983-cr(Con)
        11-2175-cr(Con)

---

[*] The Honorable Shira A. Scheindlin, of the United States District Court for the Southern District of New York, sitting by designation.

-1-

Anthony Toscano a/k/a Igor, Anthony J. Russell a/k/a Toetag,

Richard E. Riedman a/k/a Eric,

*Defendants-Appellants.*

_____

| | |
|---|---|
| FOR APPELLANTS: | MICHAEL J. TALLON, Michael J. Tallon P.C., Rochester, New York, *for* Defendant-Appellant Richard E. Reidman, |
| | JON P. GETZ, Muldoon & Getz, Rochester, New York, *for* Defendant-Appellant Anthony J. Russell, |
| | David R. Morabito, East Rochester, New York, *for* Defendant-Appellant Anthony Toscano. |
| FOR APPELLEE: | STEPHAN J. BACZYNSKI, Assistant United States Attorney, *of counsel*, *for* William J. Hochul, Jr., United States Attorney for the Western District of New York, Buffalo, New York. |

_____

Appeal from an order of United States District Court for the Western District of New York (Siragusa, *J.*). **ON CONSIDERATION WHEREOF**, it is hereby **ORDERED, ADJUDGED**, and **DECREED** that the order of the district court be and hereby is **AFFIRMED**.

Defendants-Appellants Anthony Toscano, Anthony J. Russell, and Richard E. Riedman appeal from an order of the district court denying their motion to dismiss on Double Jeopardy grounds Counts 1 through 4 of a superseding indictment in which they are charged. Defendants argue that in prior proceedings involving the same charges the district court hastily declared a mistrial when instead it should have specifically inquired of each juror who was deliberating on the multi-count, multi-party indictment in the prior case, whether the jury was genuinely deadlocked on Counts 1 through 4. We assume the parties' familiarity with the underlying facts and the issues on appeal, and we discuss these only as necessary to explain our decision.

-2-

We review for abuse of discretion a district court's decision to declare a mistrial. *United States v. Razmilovic*, 507 F.3d 130, 137 (2d Cir. 2007). This discretion, however, is "not boundless," *id.*, and as a reviewing court we have an obligation to ensure that "the trial judge exercised 'sound discretion' in declaring a mistrial." *Arizona v. Washington*, 434 U.S. 497, 514 (1978).

The Double Jeopardy Clause "operates as a limit on the power of the trial court to require a defendant to stand trial a second time following a mistrial[.] " *Razmilovic*, 507 F.3d at 136. "When a defendant moves for or consents to a mistrial, [however,] the Double Jeopardy Clause usually imposes no bar to retrying that defendant." *Id.* at 140-41. Consent may be express, or it "may be implied from the totality of circumstances attendant on a declaration of mistrial." *United States v. Goldstein*, 479 F.2d 1061, 1067 (2d Cir. 1973). We hold that the defendants each expressly consented to the declaration of the mistrial by either requesting one or voicing "no objection" to one. At the time consent was given, the jury had recently sent a note, its third, indicating that "[a]fter exhaustive deliberations" it could not "reach a unanimous decision and no amount of time will change [its] deadlock."

The jury's first note, sent on Friday, December 9, 2010, stated that the jury wanted to "return to the courtroom for advice/direction on how to continue deliberation because [it is] unable to come to [a] unanimous decision on some of the counts." After instructing the jury on its authority to deliver a partial verdict, the district court asked the jury to return to deliberations. On Monday, December 13, 2010, at 11:46 a.m., the jury provided its second note, stating, "We are 9 – 3 and unable to come to a decision." The district court gave an *Allen* charge, and the jury continued to deliberate until it sent the third note at 3:31 p.m. on the same day. At this point, the

-3-

district court engaged in a lengthy colloquy with defense counsel and the government's attorneys. The court observed that it "ha[d] three notes indicating [that the jury is] at least deadlocked on some of the counts" and that, based on the first note the jury sent out, "they at least at one point had reached a verdict on some counts." Carefully following the guideposts we have laid out in *Razmilovic*, 507 F.3d at 137-40, the district court indicated that the jury appeared "severely frustrated," in the words of one juror, and deadlocked on at least some counts. The court observed that ordering further deliberations "might be tantamount to coercive conduct." Each of the defense counsel then either called for a mistrial or voiced "no objection" to those requests, with counsel for Toscano stating "it would be [a] manifest necessity to have a mistrial." Under those circumstances by which the first trial was ultimately terminated, the Double Jeopardy Clause does not apply to bar a retrial of Toscano, Riedman, and Russell on Counts 1 through 4.

We also see no merit to Defendants' contention that their consent was somehow vitiated by the jury's subsequent delivery of a partial verdict of acquittal on Counts 5 through 13 of the indictment. Defendants contend that the partial verdict came as a surprise because they had understood the jury's final note to mean that the jury was deadlocked on all counts as to all defendants. They argue the district court acted too hastily in declaring a mistrial before determining if each juror was genuinely deadlocked on Counts 1 through 4. There are at least three problems with this line of reasoning.

*First*, far from being surprised, defense counsel was well aware of the possibility that the jurors were not deadlocked on all counts, and there is no reason to believe that the consent given was not informed. Before calling the jury into the courtroom, the district court was prescient in

predicting that the jury might have a unanimous verdict on at least some of the counts based on the notes.  It asked defense counsel for their input on what it should do regarding such eventuality.  Defense counsel argued that inquiring "beyond these notes" into whether the jury had reached a partial verdict might interfere with the deliberative process.  After hearing from the government and defense counsel, the court stated its conclusion simply to ask the jury whether it was in fact deadlocked on all counts as to all defendants and "see where it goes."  No objection was lodged and the court did exactly that.  What unfolded was the jury disclosing that it had reached unanimous decisions on some of the counts.  Without ordering further deliberations, the court recorded verdicts of acquittal as to each of the Defendants as to Counts 5 through 13 as each individual juror indicated his or her verdict.  Defense counsel had made it clear that they did not want further deliberations.  The jurors indicated that they could reach "neither" a decision of guilty or not guilty as to Counts 1 through 4.  Based on the unambiguous first note ("we are unable to come to a unanimous decision on *some* of the counts") (emphasis added), on the ambiguous second and third notes, and on the court's discussion with counsel before bringing the jury out, the jurors' unanimous decisions as to a number of the counts could not have come as a shock or surprise.  For the defendants to argue otherwise does not comport with the record.

*Second*, defense counsel in the first proceeding failed to voice an objection after the jurors indicated that they had in fact reached a unanimous decision as to some of the counts.  "[T]he decision to declare a mistrial is not irreversible until the jury has been discharged." *Razmilovic*, 507 F.3d at 141; *see Camden v. Circuit Court of the Second Judicial Circuit*, 892 F.2d 610, 616 n.7 (7th Cir. 1989)  ("While the mistrial declaration alone was not a talismanic

-5-

utterance, the discharge and dispersal of the jury rendered the mistrial a *fait accompli*. Once the jury is discharged and has dispersed, a trial court is unable to reconsider its intention to declare a mistrial."). Defense counsel had ample opportunity to approach the bench or ask for a sidebar during the time the district court took the partial verdict and before it discharged the jury. They did not do so.

*Third*, we have specifically rejected Defendants' argument that the district court abused its discretion by not asking "whether [the jury was] genuinely deadlocked as to the four specific remaining counts." In *Razmilovic*, we declined to adopt "a *per se* rule for multi-defendant cases requiring the trial court, before discharging a jury, to conduct an in-person inquiry of the jury to verify that the deadlock is intractable and that further deliberations would be of no use." 507 F.3d at 140 n.3 (internal quotation marks omitted). While that step may be a reasonable one, whether to take such a step is "properly left to the sound discretion of the trial judge." *Id.* In any event, before discharging the jury here, the district court asked the parties if they wanted further polling of the jury. All defense counsel responded in the negative.

In sum, in the circumstances presented here, counsel for the Defendants either sought declaration of a mistrial or voiced "no objection" when the court announced its intention to grant one; counsel had the opportunity, during the court's ongoing interaction with the jury in the courtroom and thereafter, to propose an alternative course of action and did not do so; and counsel was provided a specific opportunity, when asked if they wanted to further poll the jury, to seek to modify the plan to declare a mistrial and let jury deliberations proceed, yet they did

-6-

nothing.  We cannot say that the district court was required to take any different action than it did.[1]

We thus hold the district court did not err in declaring a mistrial and that it did so based on Defendants' consent.  We have considered Defendants' remaining arguments and find them without merit.[2]  Accordingly, we AFFIRM the order of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

---

[1] This is not to say that there may not be a case involving a purportedly deadlocked jury where the trial court may have to act *sua sponte*, without request or urging from counsel, but this is certainly not that case.

[2] Because we agree with the district court that Defendants had consented to the mistrial, we do not reach its alternative holding that a mistrial was proper under the "manifest necessity" standard.  We do, however, appreciate the district court's colloquy with the parties and its explanation of its decision.  "While a trial judge is not constitutionally mandated to explain the decision to declare a mistrial if 'the record provides significant justification,' when we are unable to discern from the record that a jury was genuinely deadlocked, a trial judge's explanation, elaborating on the decision to declare a mistrial, can aid our inquiry." *Razmilovic*, 507 F.3d at 140 (quoting *Washington,* 434 U.S. at 516-17).