(No. 63174.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JULIA CAMDEN, Appellee.

*Opinion filed January 30, 1987.*

Neil F. Hartigan, Attorney General, of Springfield, and Jon C. Anderson, State's Attorney, of Robinson (Roma Jones Stewart, Solicitor General, and Mark L. Rotert and Marcia L. Friedl, Assistant Attorneys General, all of Chicago, and Kenneth R. Boyle, Stephen E. Norris, and Raymond F. Buckley, Jr., of the State's Attorneys Appellate Service Commission, of Mt. Vernon, of counsel), for the People.

Robert L. Douglas and Fred W. Johnson, of Robinson, for appellee.

JUSTICE MORAN delivered the opinion of the court:

The defendant, Julia Camden, was charged by information with two counts of aggravated battery (Ill. Rev. Stat. 1981, ch. 38, pars. 12—4(a), 12—4(b)(1)), armed violence (Ill. Rev. Stat. 1981, ch. 38, par. 33A—2) and attempted murder (Ill. Rev. Stat. 1981, ch. 38, pars. 8—4(a), 9—1(a)(1)) as a result of an incident that occurred in a tavern in Crawford County. The defendant's trial ended when the trial court, *sua sponte*, declared a mistrial. The case was set, by agreement, for retrial before another jury. Thereafter, the defendant filed a motion to bar further prosecution and enter a judgment of acquittal on the ground of double jeopardy. The motion judge found that the defendant had consented to the mistrial and denied the motion. The defendant appealed pursuant to Rule 604(f) (94 Ill. 2d R. 604(f)). A majority of the appellate court reversed and remanded the cause with directions that the defendant be discharged (140 Ill. App. 3d 480, 488). We allowed the People's petition for leave to appeal under Rule 315 (87 Ill. 2d R. 315).

The issues presented for review are (1) whether the defendant implicitly consented to the declaration of the mistrial by her failure to object, and (2) whether there was a manifest necessity for the declaration of a mis-

trial. Because we find that the defendant consented to the mistrial, we do not reach the question of whether there was a manifest necessity for the mistrial.

On July 21, 1983, at approximately 9 p.m., Ivan L. York, Jr., was sitting with Kevin Pethel and Pethel's mother at a table in the Saloon, a tavern in Robinson, Illinois. Approximately one hour later, York and Pethel left for another tavern. The defendant approached Mrs. Pethel and asked if York had left with a woman who was sitting at another table. When Mrs. Pethel indicated that York did not leave with the other woman, the defendant walked away and sat at the bar.

York returned to the Saloon at approximately 11 p.m. He ordered a drink at the bar and resumed his seat at the table with Kevin and Mrs. Pethel. The defendant approached York, leaned over, and told him that she hoped he had "enjoyed himself." Defendant then shot York in the abdomen and hurried out of the tavern. The defendant was later arrested and found to be in possession of a .22-caliber Derringer pistol.

The defendant pleaded not guilty and raised the defense of insanity. She later entered a residential treatment program for alcoholism. Before trial, the defendant filed a statement of facts in which she admitted the factual allegations of the information but denied that she had the requisite *mens rea.*

On June 26, 1984, a jury with one alternate juror was impaneled and sworn. The State rested its case in chief the next day, and the defense began presenting its evidence that afternoon. The following day, June 28, while the jurors, along with their custodian, Sheriff Richard Hunnicutt, were having lunch, one of the jurors, Donald D. Hatton, told the sheriff that he had reservations concerning his ability to render an impartial verdict because of his own prior drinking problem. Before court reconvened, the sheriff reported this incident to the trial

judge, A. Hanby Jones. The judge held a hearing in his chambers outside the presence of the remaining jurors. The defendant, her counsel and the State's Attorney were present.

The judge first called the sheriff. Under examination by the court, he testified that he had been seated at a table with Hatton and the other jurors. Hatton, who was sitting to his right, told him: "I have something I have to tell you that I think you should report. I cannot give an impartial judgment because of my drinking." The sheriff further testified that the other jurors overheard "every word" of this conversation and engaged in a conversation about Hatton's comment. Neither the State's Attorney nor defense counsel examined the sheriff.

The judge then called Hatton. He testified that he told the sheriff that he did not believe that he could render an impartial verdict because he previously had a drinking problem. Although he testified that he did not discuss the matter with the other members of the jury, Hatton believed that they overheard his conversation with the sheriff. Hatton further testified that the alternate juror said to him, "You're going to stick me yet, aren't you." When the judge expressed concern as to whether the other jurors were influenced by Hatton's comments, Hatton testified that he "really, honestly couldn't say" whether his comment influenced the other jurors. The court's examination of Hatton concluded:

"Q. I see. Just exactly what were your words, if you recall?

A. Probably '[w]hat steps should someone take if they had a feeling that they could no longer render what they thought might be a true and honest opinion of this case' or something to that affect [sic] is as close to the words as I can remember. I can still try, and I know I would try to do it.

Q. Yes.

A. But it may place a bigger burden on the State

than what could be overcome. I don't know."

The judge then asked the State's Attorney if he had any questions for Hatton. The State's Attorney began his examination:

"Q. You're saying that you had a prior drinking problem?

A. Yes, definitely. Really did.

Q. Why would a prior drinking problem affect your deliberation?

[DEFENSE COUNSEL]: Judge, I object. That's just improper. You've conducted your inquiry. We've got our record and—

THE COURT: Do you have any questions?

[DEFENSE COUNSEL]: Absolutely no questions."

The court thanked Hatton for his candor and the following exchange occurred:

"[DEFENSE COUNSEL]: Thank you, Mr. Hatton. I think [the State's Attorney] and I ought to talk. It might save the county a lot of money.

[STATE'S ATTORNEY]: Put that on the record.

[DEFENSE COUNSEL]: Put that on. Ten minutes to talk?

THE COURT: Yes, sir."

The record reflects that a recess was taken at this point. The record does not reveal what, if any, conversation took place between counsel. Court reconvened at 1:52 p.m. and the jury was brought in at 1:53 p.m. The judge then addressed the jury in open court:

"THE COURT: All right, ladies and gentlemen of the jury, the Court, at this particular moment, has made the following minutes on its docket: The Court is advised by an officer of this Court that one of the jurors has indicated before other members of the Jury and the Alternate that they [*sic*] cannot be giving an unbiased verdict or render an unbiased verdict or render an unbiased verdict in this cause. And so it is the duty of the Court at this time to declare a mistrial. And this Juror and the officer of the Court were both duly sworn by the Court and

did testify out of the presence of the Jury. The bond of the Defendant will be continued, *and this cause will be continued for a further trial setting*. And this Jury is now discharged.

I want to thank you very much for your kindness and attention. I realize this has been a long ordeal but this is one of the main theories that we have here is justice for all. And it would not be fair to all concerned if this juror did continue to sit and the fact that the other jurors heard the statements that he made. I do want to thank you and you are now excused.

[DEFENSE COUNSEL]: Thank you ladies and gentlemen; I appreciate it very much.

[STATE'S ATTORNEY]: Appreciate your attention." (Emphasis added.)

After the jury was dismissed, the State's Attorney suggested that a new trial date be set. Defense counsel acknowledged the possibility that the cause might be assigned to another judge and waived the defendant's speedy-trial demand.

The record indicates that on July 19, 1984, the case was set by agreement for trial on November 13, 1984. The original trial judge recused himself from further consideration of the case on July 25, 1984, and the case was assigned to another judge for trial.

The defendant filed a motion for substitution of the new trial judge on August 30, 1984, which was allowed. Thereafter, on September 11, the defendant filed a motion to bar further proceedings and enter a judgment of acquittal. A judge, other than the one assigned to conduct the new trial, heard arguments on the motion and entered an order denying the defendant's motion on November 7, 1984. The order stated:

"Unless Defendant can be said to have consented, then the question of whether a retrial is possible depends upon whether there was a 'manifest necessity' for the mistrial.
***

While Defendant did not request the mistrial, I deem the record to show consent. After the court heard evidence, the State's Attorney and Defense Counsel apparently had a discussion. After that talk, the content of which is not part of the record, the court announced a mistrial and discharged the jury.

Defendant, although present with counsel, did not object to the declaration. Perhaps she had no duty to object, although that question is also not before the court. What did occur is that [the State's Attorney] asked the court to set a new trial date. [Defense counsel] obviously anticipated going to trial again, and stated that the case might be assigned to another judge. *** [Defense counsel], with Defendant present, then waived the prior demand for a speedy trial.

Under these circumstances, there having been no objection to the granting of a mistrial and Defendant, through counsel, having waived the speedy trial demand, Defendant consented to the allowance of a mistrial and may not now raise the issue. Thus, it appears to be unnecessary to determine whether Judge Jones properly declared a mistrial or whether this court now has the right and authority to examine and rule upon his decision."

Defendant filed an interlocutory appeal from this order pursuant to Rule 604(f) (94 Ill. 2d R. 604(f)). A majority of the appellate court reversed (140 Ill. App. 3d 480), holding that a defendant's silence and failure to object to the trial court's declaration of a mistrial did not constitute consent (140 Ill. App. 3d 480, 485).

Since the trial judge declared the mistrial after the jury had been selected and sworn, there is no question that jeopardy had attached. Our finding that jeopardy had attached does not, however, necessarily bar a second trial. (*People ex rel. Roberts v. Orenic* (1981), 88 Ill. 2d 502, 507; *People ex rel. Mosley v. Carey* (1979), 74 Ill. 2d 527, 534-35, *cert. denied* (1979), 444 U.S. 940, 62 L. Ed. 2d 306, 100 S. Ct. 292.) Whether reprosecution following the declaration of a mistrial is constitutionally permissi-

ble turns on whether the mistrial "can be said to be attributable to the defendant by virtue of his motion or consent." See *People ex rel. Roberts v. Orenic* (1981), 88 Ill. 2d 502, 508.

In *United States v. Jorn* (1971), 400 U.S. 470, 27 L. Ed. 2d 543, 91 S. Ct. 547, the Supreme Court stated:

> "[W]here circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for a mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." (*United States v. Jorn* (1971), 400 U.S. 470, 485, 27 L. Ed. 2d 543, 556, 91 S. Ct. 547, 557 (plurality opinion by Harlan, J., joined by Burger, C.J., and Douglas and Marshall, JJ.).)

This court has followed and applied this standard of review in cases in which the defendant sought, or at least consented to the mistrial. See *People ex rel. Roberts v. Orenic* (1981), 88 Ill. 2d 502, 508-10; *People ex rel. Mosley v. Carey* (1979), 74 Ill. 2d 527, 535-37, *cert. denied* (1979), 444 U.S. 940, 62 L. Ed. 2d 306, 100 S. Ct. 292.

Since the defendant did not move for a mistrial, we must address the issue of whether the defendant's failure to object constituted consent. The defendant contends that she had no opportunity to voice an objection. The record, however, does not support this argument.

At the conclusion of his examination of Hatton, the trial judge asked the State's Attorney if he had any questions for Hatton. The State's Attorney attempted to determine the reason, if any, why Hatton's prior drinking problem would affect his deliberation. Defense counsel immediately objected to this line of questioning, stating, "We've got our record." The judge then asked defense counsel if he had any questions. Defense counsel replied, "Absolutely no questions." We believe that de-

fense counsel had an opportunity to object at this point had he so desired.

In addition, the record indicates that defense counsel had another opportunity to object. After the court declared the mistrial, but before it actually discharged the jury, the court had stated: "and this cause will be continued for a further trial setting." The judge's statement demonstrates that he contemplated a second trial. While the fact that the court contemplates a second trial is not conclusive (*United States v. Scott* (1978), 437 U.S. 82, 92, 57 L. Ed. 2d 65, 75, 98 S. Ct. 2187, 2194), we believe it is a factor to be considered in determining whether the defendant consented. Although the judge made it clear to the parties that there would be another trial, defense counsel stood mute. Counsel could have requested a sidebar and objected outside the presence of the jury. Instead, defense counsel simply expressed his gratitude to the jury.

Furthermore, defense counsel's conduct after the mistrial ruling evinces acquiescence to the mistrial. Immediately after the jury was discharged, the State's Attorney, believing that the defendant had made a speedy-trial demand, suggested that the case be set for trial in September. Although there is no speedy-trial demand in the record before us, defense counsel waived the speedy-trial demand on the record. The record further shows that the case was set *by agreement* for a second trial to commence November 13, 1984. After the trial judge recused himself from further consideration of the cause, defense counsel filed a motion for substitution of the judge to whom the cause was reassigned. The first time defense counsel objected to the mistrial was when he filed a motion to bar further proceedings and enter a judgment of acquittal on September 11, 1984—more than two months after the mistrial was declared.

We conclude that defense counsel's failure to object to

the mistrial, despite having had an adequate opportunity to do so, and his course of conduct after the mistrial was declared, constituted acquiescence to the mistrial. We therefore hold that the defendant implicitly consented to the mistrial. Consequently, the double jeopardy clause, under the facts in this case, does not bar reprosecution of the defendant.

Having concluded that the defendant implicitly consented to the mistrial, we need not reach the question of whether the mistrial was manifestly necessary or required by the ends of public justice.

For the foregoing reasons, the judgment of the appellate court is reversed and the cause is remanded to the circuit court of Crawford County for further proceedings.

*Reversed and remanded.*