(No. 71297.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appel-
lant, v. ANTHONY ORTIZ, Appellee.

*Opinion filed September 24, 1992.*

HEIPLE, J., dissenting.

Neil F. Hartigan and Roland W. Burris, Attorneys General, of Springfield, and Gary L. Spencer, State's Attorney, of Morrison (Rosalyn B. Kaplan, Solicitor General, Terence M. Madsen and Steven J. Zick, Assistant Attorneys General, of Chicago, and Kenneth R. Boyle, John X. Breslin and Gary F. Gnidovec, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Rolfe F. Ehrmann, of Ehrmann, Gehlbach & Beckman, of Dixon, for appellee.

JUSTICE CUNNINGHAM delivered the opinion of the court:

On October 27, 1988, an information was filed in Whiteside County charging defendant, Anthony Ortiz, with two counts of aggravated sexual abuse of his then-girlfriend's nine-year-old daughter. At the bench trial, and after several witnesses had testified, defense counsel moved for dismissal because the State's Attorney stated that the chief witness was not in the courthouse and would not be available for two hours. The trial court denied the State's motion for continuance and granted defendant's motion to dismiss. The State filed a motion to reconsider. The circuit court granted the motion. At a

subsequent trial, conducted by a new judge, the circuit court found defendant guilty. Defendant appealed.

The appellate court reversed the judgment of the circuit court and vacated defendant's conviction. (207 Ill. App. 3d 569.) From this judgment, the State appeals, raising only one issue: whether double jeopardy attached, preventing the second trial and conviction. We reverse.

The facts are as follow. After the information was filed on October 31, 1988, the trial court ordered the parties to produce discovery within 28 days. On February 6, 1989, the defendant entered a plea of not guilty, a waiver of a jury trial, and a demand for a bench trial. The bench trial was scheduled for February 24, 1989, at 10:30 a.m. On February 21, 1989, the State and defendant filed a joint motion for a continuance. The trial court granted the motion and scheduled the bench trial for April 14, 1989, at 10:30 a.m.

At the next trial setting of April 14, 1989, all parties were present for the bench trial. However, the State filed a motion to compel discovery and a continuance attributable to the defendant for failure to produce discovery. In reply to the State's motion to comply with discovery, defendant tendered discovery on the trial date. The trial court granted the motion to continue and attributed the continuance to defendant. The State withdrew its motion to compel discovery. The trial court continued the trial to Monday, April 24, 1989, at 11 a.m.

On April 24, 1989, the case proceeded to trial. After opening statements by the State and the defense, the State proceeded to call its witnesses.

The first witness was Anita Johnson, a registered nurse for the Unit 5 school district at Willard School. She stated that the victim attended Willard School at the time of the incident. She was present when an organization through the YWCA made a presentation to the

third, fourth and fifth grades at the school. The Child Assault Program workers presented the program. The program used role playing to describe situations where a child would be uncomfortable, *e.g.*, the classroom bully or the very affectionate uncle. Johnson was present during the presentation.

After the presentation, the victim initially spoke to a Child Assault Program worker. Johnson was then called in to talk to the victim. At that time, the victim related to Johnson that her mother's boyfriend, the defendant, had come home drunk one night, crawled into bed, took his hand and slid it down the front of her panties. He also took her hand and put it down the front of his pants. Johnson stated that the victim was very upset as she told her about the incident. Johnson stated that the victim's head was down and that she was fighting back tears. The victim was also very uncomfortable. Johnson stated that she filed a report with the Department of Children and Family Services by calling the hotline and submitting a written report.

Johnson was familiar with the victim, who was nine years old and in the fourth grade. Johnson had known the victim for one school year. During that time, she saw the victim interact with other children about once or twice a week. Prior to the victim's revelations, Johnson had seen the victim a few times for playground-type injuries.

Stacey Lawrence testified next. She stated that she was 10 years old and in the fifth grade. She knew the victim because they were in the fourth grade together, but with different teachers. She stated that the victim was her friend.

She recalled one Friday evening during which the victim's mother picked up her and two other friends (Tricia and Zenia) at the recreation center and took them home. The defendant was not with the victim's mother. She re-

called arriving home at 9:15 p.m. At approximately 11 or 11:30 p.m. that evening, she received a phone call from the victim. The victim started to talk for a while and then she started to cry. After the victim cried, she talked for about 15 minutes. The victim told her that she was home alone and that her mother and defendant were about to arrive home. The victim stated that defendant might do something to her. During the phone conversation, the victim stated that she was in the bathroom or in her room with the door locked.

Gail Ortiz testified to the following. She and her daughter moved in with defendant in October 1987. On October 24, 1988, she married the defendant. During the course of their relationship, defendant became drunk on four or five occasions. She recalled one evening in which the defendant started to drink at the VFW. Prior to going to the VFW, she picked up her daughter and took her to the recreational center. She then drove to the VFW in order that defendant could follow her home. After taking defendant's car home, she and defendant went to another bar so he could continue drinking. Gail returned home, but later left to pick up the victim at the center around 9:30 or 10 p.m. After she took her daughter home, she waited for defendant to call for a ride. She picked up defendant at approximately 10 or 10:30 p.m.

While Gail Ortiz was testifying, the State requested to approach the bench. The State told the judge:

"The victim is in school in Pekin, Illinois. They knew that the court date was today. I think her father must have forgotten the date. I don't know why she isn't here. Do you want me to continue with this witness?"

At that time, defense counsel requested a motion to dismiss. The judge replied that it would recess after Gail Ortiz's testimony until 1 p.m. The court stated further that since the victim was in school, she would not be

able to be at the trial. The State replied that its last continuance was because it had not received discovery. The State also stated that it did not want to ask for a continuance. The court replied, "You can't," and told the witness, Gail Ortiz, to step down. After a short recess was taken, the State requested a continuance because the victim could not arrive until 2:30 p.m. and it was 11:45 a.m. Defense counsel objected to the motion and requested a motion to dismiss because "the State has long had an opportunity to prepare this case which was filed last October and called for trial this date. The defendant is in jeopardy, and if the State cannot produce its witness in a timely fashion on the day of trial, then I would request that the case be dismissed." The court stated: "The motion to dismiss is heard and allowed."

Four days later, on April 28, 1989, the court held a hearing on the State's motion to reconsider the order dismissing the cause and denying its request for continuance. Defense counsel waived presence of defendant at the hearing.

The first witness called to testify was Darryl Alcorn, father of the victim. He stated that he recalled that a bench trial was set for April 14, 1989; however, the case was continued. He stated that the victim was present prior to testimony beginning on April 14. However, the State's Attorney advised him that the trial was continued. At that time, he even wrote the new trial date of April 24 in a book entitled "King's Fools." He stated that since he resided in Pekin, Illinois, with his daughter, approximately 108 miles from Morrison, it would take approximately 1 hour and 45 minutes to drive the distance and two hours if he obeyed the speed limit.

He stated that on April 14 he was so nervous and upset that although he wrote down the 24th, he only recalled hearing the new trial date was in two weeks. Thus, he began to think of the next trial date as the

28th instead of the 24th. He even went to work and asked for the 28th off. He was surprised when the State's Attorney's office called at 11:25 a.m. on the 24th and told him to come into court. At that time, he was willing to bring his daughter to court, but he would arrive in 2½ hours. The victim was still willing to testify.

Susan Noble, a victim assistant for the Whiteside County State's Attorney's office, stated that on the date of the trial she was aware of four witnesses at the courthouse. The witnesses were Stacey Lawrence, Anita Johnson, Ron Posoff and Marie Flosie. Only Lawrence and Johnson had testified at the time of the dismissal. Before trial began, she did attempt to contact Darryl Alcorn at several places. When she contacted the victim's school, she discovered that the victim was still in school. At that point, she told the State's Attorney about the situation. After three to five minutes, she received a phone call from Darryl Alcorn stating that he would come to the courthouse immediately. Although her job is to contact the witnesses to confirm dates and times, she was not sure if she advised Darryl Alcorn that he was to be present on the 24th.

At the close of the testimony, the State argued that the trial court was aware that it was willing to proceed with the case because the witness, Gail Ortiz, had not finished her direct testimony. The State argued that it should have requested a recess and, if the court denied that motion, it should have proceeded with the evidence. The defense responded that it was the State that requested the continuance.

At the conclusion of the hearing, the trial court reinstated the charges. At the second trial, a new judge was assigned. The court found the defendant guilty of two counts of aggravated sexual abuse. Defendant appealed. The appellate court held that under the circumstances double jeopardy attached and, as such, the State was

precluded from reprosecuting defendant. The State appeals.

The only issue before this court is whether double jeopardy had attached, thereby preventing the reinstatement of charges and a second trial. The State contends that the appellate court erroneously held that the trial court's dismissal order was tantamount to an acquittal on the merits, thus barring retrial where the prosecution had not completed its case in chief. In any event, the State was not required to produce the victim in order to prove defendant's guilt beyond a reasonable doubt.

The double jeopardy clause of the United States Constitution, enforceable against the States through the fourteenth amendment, provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." (U.S. Const., amends. V, XIV.) Section 10 of article I of the Illinois Constitution provides the same protection. (Ill. Const. 1970, art. I, §10.)

> "The Clause *** guarantees that the State shall not be permitted to make repeated attempts to convict the accused, 'thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' " (*United States v. Martin Linen Supply Co.* (1977), 430 U.S. 564, 569, 51 L. Ed. 2d 642, 649, 97 S. Ct. 1349, 1353, quoting *Green v. United States* (1957), 355 U.S. 184, 187-88, 2 L. Ed. 2d 199, 204, 78 S. Ct. 221, 223.)

Thus, the doctrine of double jeopardy prevents the reprosecution of persons who are acquitted of a criminal offense. *United States v. Scott* (1978), 437 U.S. 82, 88, 57 L. Ed. 2d 65, 72, 98 S. Ct. 2187, 2192.

It is well established that "[t]he traditional rule is that jeopardy attaches in a bench trial when the first witness is sworn and the court begins to hear evidence."

(*People v. Deems* (1980), 81 Ill. 2d 384, 389.) The State in this case concedes that jeopardy has attached. However, the State contends that those rules governing double jeopardy "should not be applied mechanically when the interests they protect are not endangered and when their mechanical application would frustrate society's interest in enforcing its criminal laws." (*Deems*, 81 Ill. 2d at 388, citing *Illinois v. Somerville* (1973), 410 U.S. 458, 463, 35 L. Ed. 2d 425, 430, 93 S. Ct. 1066, 1070.) We agree with that argument and add that " 'the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial.' " *Serfass v. United States* (1975), 420 U.S. 377, 390, 43 L. Ed. 2d 265, 275, 95 S. Ct. 1055, 1064, quoting *Somerville*, 410 U.S. at 467, 35 L. Ed. 2d at 433, 93 S. Ct. at 1072.

The State argues that the dismissal by the trial court amounted to a dismissal for want of prosecution, "a dismissal that was entirely unwarranted given the facts." The defendant argues the dismissal by the trial court "can only be reasonably construed as relating to the sufficiency of the evidence." Thus, defendant argues that the "order of dismissal was a factual determination of insufficiency of evidence."

The defendant relies on *People v. Bean* (1985), 135 Ill. App. 3d 336, for the proposition that when the State elected to stand on its motion to continue, it placed the trial court in a posture of either granting the continuance or terminating the trial due to the insufficiency of the evidence, as requested by the defense. The State's position in *Bean* is parallel to the State's position in this case and, as such, at issue was whether the order was a dismissal of the charge or an acquittal. The *Bean* court held that the order was an acquittal barring reprosecution. However, we find *Bean* inapplicable.

Both parties argue that the motion was a motion to dismiss, understandably granted on different grounds. However, in reading the record, we find that the motion and the resulting order were "functionally indistinguishable from a declaration of mistrial." (*Lee v. United States* (1977), 432 U.S. 23, 31, 53 L. Ed. 2d 80, 87, 97 S. Ct. 2141, 2146.) As such, the questions to be answered upon review are whether the trial court acted properly and whether there was " 'manifest necessity for the act, or the ends of public justice would otherwise be defeated.' " (*People v. Laws* (1963), 29 Ill. 2d 221, 225, quoting *United States v. Perez* (1824), 22 U.S. (Wheat) 579, 580, 6 L. Ed. 165, 165.) However, the overriding concern in view of these questions is not how the motion is labeled but more importantly "whether the order contemplates an end to all prosecution of the defendant for the offense charged." (*Lee*, 432 U.S. at 30, 53 L. Ed. 2d at 87, 97 S. Ct. at 2145.) This court can only answer these questions by a thorough reading of the record.

First of all, we note that the one matter which can be said is that "a criminal trial is, even in the best of circumstances, a complicated affair to manage." (*United States v. Jorn* (1971), 400 U.S. 470, 479, 27 L. Ed. 2d 543, 553, 91 S. Ct. 547, 554.) As stated in *Jorn*:

> "[I]t is clear beyond question that the Double Jeopardy Clause does not guarantee a defendant that the Government will be prepared, in all circumstances, to vindicate the social interest in law enforcement through the vehicle of a single proceeding for a given offense." *Jorn*, 400 U.S. at 483-84, 27 L. Ed. 2d at 556, 91 S. Ct. at 556.

Nothing in this record suggests that the circumstances were used by the prosecution for the purpose of securing a more favorable hearing or in any way taking advantage of or harassing this defendant. It appears to be one of those circumstances that creeps into a prosecutor's life as a result of inadvertence. In this case, the

trial court failed to express a reason for the dismissal. Furthermore, the trial court did not give full consideration to the possibility of trial continuation. There is no evidence that the victim could not be present; quite to the contrary, the minor would have been available at 2:30 p.m. Gail Ortiz was still on the stand, direct examination had not been completed, and the judge, in reply to defense counsel's motion to dismiss, could have recessed after Ortiz's testimony and reconvened at 1 p.m.

A less drastic alternative was available to the trial judge, which would have allowed the trial to continue. Given the facts available to the judge and his apparent unwillingness to examine the issue in more depth, there does not seem to have been a basis for the judge to grant dismissal. The judge should have considered the alternative to aborting the trial, such as he suggested in the first place: finish with the testimony of Ortiz, recess for lunch, and continue at 1 p.m. Unfortunately, he did not go far enough. For all we know, his action may have been his concern for the trial docket. However, the trial court reversed its decision later. We can only discern from the record that the trial court did not contemplate that its actions would bar reprosecution.

Since this court finds the order functionally indistinguishable from a motion for mistrial, we must determine next whether the trial court acted properly. The law is well established:

"[Although] the ruling of the trial court granting a mistrial is not subject to review in the absence of an abuse of discretion, [citation], *** 'the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes ***.' [Citations.]" *Laws*, 29 Ill. 2d at 225.

This court must also determine whether the trial court abused its discretion.

"[The] doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings. [Citation.]

The conscious refusal of this Court to channel the exercise of that discretion according to rules based on categories of circumstances [citation], reflects the elusive nature of the problem presented by judicial action foreclosing the defendant from going to his jury. But that discretion must still be exercised; unquestionably an important factor to be considered is the need to hold litigants on both sides to standards of responsible professional conduct in the clash of an adversary criminal process. * * *

* * * Yet, in the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *Jorn,* 400 U.S. at 485-86, 27 L. Ed. 2d at 557, 91 S. Ct. at 557-58.

Since this court finds that the circumstances presented are "functionally undistinguishable from a declaration of a mistrial," we find that the trial court abused its discretion when it granted a midtrial dismissal in favor of defendant's motions to dismiss before there was any determination of factual guilt or innocence. When one examines the circumstances surrounding the dismissal of the case, it seems abundantly apparent that the trial judge made no effort to exercise sound discretion. In light of the circumstances, the trial court believed that the only alternative was to grant a dismissal. There was another alternative in this case and that was to grant a recess and

reconvene at 1 p.m., thereby giving the victim and her father time to arrive at the courthouse.

If the defendant had forced the State to proceed with its proof, it would almost certainly not have been useless. The State might not have persuaded the court of defendant's guilt. In that situation, there would be no doubt that double jeopardy had attached. Thus, we find that the trial court acted in haste without reflection upon the fact that two witnesses were yet to testify and one witness had yet to finish her testimony, in addition to the lunch break to be taken soon.

At most, the facts show that the prosecutor's failure to have the crucial witness, the victim, present was negligent oversight. But, immediate steps were taken to correct this oversight through the efforts of Susan Noble, victim assistant, who contacted the father of the victim. The father promised that his daughter would be at the courthouse by 2:30 p.m. that day. There was no manifest necessity for the trial judge to dismiss this case. See *Downum v. United States* (1963), 372 U.S. 734, 10 L. Ed. 2d 100, 83 S. Ct. 1033; *United States v. Jorn* (1971), 400 U.S. 470, 27 L. Ed. 2d 543, 91 S. Ct. 547.

Another aspect of a motion for mistrial is whether the "error"—failure to have the victim at trial—was motivated by bad faith or undertaken to harass or prejudice. (*Lee*, 432 U.S. at 33, 53 L. Ed. 2d at 89, 97 S. Ct. at 2147.) As stated in *Lee*:

" 'The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where "bad-faith conduct by judge or prosecutor," [citation] threatens the "[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecu-

tor a more favorable opportunity to convict'' the defendant. [Citation.]' '' *Lee,* 432 U.S. at 33, 53 L. Ed. 2d at 89, 97 S. Ct. at 2147, quoting *United States v. Dinitz* (1976), 424 U.S. 600, 611, 47 L. Ed. 2d 267, 276, 96 S. Ct. 1075, 1081.

It is quite true that the State, with all of its resources and power, should not be able to make repeated attempts to convict an individual for an alleged offense. The truth is expressed in three common law pleas, *autrefois acquit* (formerly acquitted), *autrefois convict* (formerly convicted), and pardoned (pardoned for the same offense), which lie at the core of the area protected by the double jeopardy clause. *Scott,* 437 U.S. at 87, 57 L. Ed. 2d at 71, 98 S. Ct. at 2192.

But, this case is a far cry from the situation in the present case, where the State is quite willing to continue with its production of evidence to the defendant's guilt before the trier of fact (judge). A short recess was all that was requested, although inartfully by the prosecutor. The defendant in this case, however, seeks termination in midtrial on grounds unrelated to guilt or innocence. To quote the Supreme Court in *Scott,* 437 U.S. at 96, 57 L. Ed. 2d at 77, 98 S. Ct. at 2196, "This is scarcely a picture of an all-powerful State relentlessly pursuing a defendant who had either been found not guilty or who had at least insisted on having the issue of guilt submitted to the first trier of fact. It is instead a picture of a defendant who chooses to avoid conviction and imprisonment, not because of his assertion that the Government has failed to make out a case against him, but because" of the failure of the victim to be present at the outset of the trial, but who would have been available at 2:30 p.m. Thus the trial court acted properly when it took the opportunity to correct its ruling on dismissing the case after hearing testimony.

We find that the trial court abused its discretion when it granted defendant's motion to dismiss. There did not exist any manifest necessity to grant the mid-trial dismissal. For the foregoing reasons, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE HEIPLE, dissenting:

Since the principle of double jeopardy precludes the defendant's reprosecution, I respectfully dissent. U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, §10.

Defendant, Anthony Ortiz, was charged with two counts of aggravated criminal sexual abuse. Defendant waived his right to a jury trial and, on April 24, 1989, the case proceeded to a bench trial. Following opening statements by the State and the defense, the State proceeded to call its witnesses. Anita Johnson testified first and Stacey Lawrence testified second. The victim's mother, Gail Ortiz, then took the stand to testify. Midway through the mother's testimony, the State informed the court that the nine-year-old victim was not available to testify because her father had confused the trial date and he could not have her at the courthouse for another 2½ hours. The State then requested a continuance and defense moved for a dismissal on the following grounds:

> "The State has long had an opportunity to prepare this case which was filed last October and called for this trial date. The defendant is in jeopardy, and if the State cannot produce its witness in a timely fashion on the day of trial, then I would request that the case be dismissed."

The court then denied the motion for a continuance and allowed the motion to dismiss. Thereafter, the State moved the court to reconsider its ruling, and the court found that it had erred in denying the State's motion for

a continuance. The defendant's charges were then reinstated, a new bench trial was begun and completed, and the defendant was convicted.

The appellate court reversed the defendant's conviction finding that double jeopardy protections precluded defendant's reprosecution for the same offense. (207 Ill. App. 3d 569.) The majority opinion herein reverses the appellate court and affirms the judgment of the circuit court.

The majority concludes that the circuit court's granting of the defendant's motion to dismiss during the first bench trial was really the functional equivalent of an order declaring a mistrial, thus avoiding the double jeopardy issue and legitimizing the second trial. Such assertion will not bear analysis.

A mistrial is defined in Black's Law Dictionary as "[a]n erroneous, invalid, or nugatory trial; a trial of an action which cannot stand in law because of want of jurisdiction, or a wrong drawing of jurors, or disregard of some other fundamental requisite." (Black's Law Dictionary 1195 (3d ed. 1933).) The defendant's first bench trial cannot be characterized as invalid or missing some fundamental requisite. To the contrary, except for a lack of evidence, there was nothing legally deficient from the defendant's first bench trial.

A mistrial would not be called for in a situation where the prosecution had presented insufficient evidence to convict and was unable to go forward. If defense counsel had moved for such, it would have been a demonstration of incompetence. If the trial court had granted a motion for mistrial, it would have been error to do so. Thus, referring to the dismissal of the case as the functional equivalent of a mistrial is to engage in circumlocution.

The issue in this case is not what might have been but, rather, what was. The prosecution moved for a con-

tinuance which was denied. The defendant moved for a dismissal which was granted. Certainly, it would have been in the interest of justice if the trial judge had continued or recessed the trial to allow for the production of the critical witness. That did not happen.

The State concedes and the majority opinion agrees that, at the time of the dismissal, the defendant had been placed in jeopardy as that term is understood. That is so because the trial had begun and three witnesses had testified.

That we are dealing here with a guilty defendant is made manifest from the fact of his conviction at the second trial. Most fair-minded people, myself included, would desire that this guilty defendant be held to account. Opposed to this result, however, is the constitutional principle of double jeopardy. So far as the undeserving defendant in this case is concerned, it would be well if his conviction were sustained. If to reach that desirable result, however, it is necessary to do violence to the time-honored, humane and constitutional principle of double jeopardy, then such result is not warranted. That is to say, the desired result in a particular case does not warrant the abnegation of a valid constitutional principle of broad and general application.

Accordingly, I respectfully dissent.