THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TIMOTHY C. ROCHE, Defendant-Appellant.

Second District    No. 2—92—1414

Opinion filed March 3, 1994.—Rehearing denied April 15, 1994.

Robert Steven Wilson, of Sycamore, for appellant.

Gary W. Pack, State's Attorney, of Woodstock (William L. Browers, Robert J. Biderman, and Elliott Turpin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE PECCARELLI delivered the opinion of the court:

Defendant, Timothy Roche, was indicted on one count of reckless homicide (Ill. Rev. Stat. 1989, ch. 38, par. 9—3(a) (now 720 ILCS 5/9—3(a) (West 1992))). After the State had presented the bulk of its evidence at trial, the trial court declared a mistrial. The State proceeded to reprosecute defendant for the same offense. Defendant now appeals the trial court's refusal to dismiss the indictment on double jeopardy grounds. Defendant claims that the mistrial was not the result of manifest necessity and that the trial court granted it without defendant's consent.

On July 22, 1990, eight-year-old Michael Grimm was killed after the van his father was driving collided with the car that defendant was driving. The State charged defendant with reckless homicide in connection with Michael's death. Defendant has provided only a portion of the trial record. What defendant has supplied reveals that the following relevant events took place at defendant's trial. Rose Alfonso, a medical technologist, testified for the State on September 16, 1992, concerning defendant's blood tests. The following exchange

took place before the jury while defendant's attorney was cross-examining Alfonso concerning conversations that she had with the prosecutor prior to trial:

"MR. BEADERSTADT [Prosecutor]: Objection, your Honor. This goes to case preparation ***.

* * *

MR. WILSON [Defense attorney]: I would like to ask her if she had [spoken with the prosecutor].

THE COURT: Well, then ask her that. Don't ask—Don't ask her a lot of other questions.

I'll permit that question.

MR. WILSON: All right. Thank you Judge.

BY MR. WILSON:

Q. Did you have any conversation with anybody about the testimony that you would give before you came here today?

A. Yes.

Q. With whom?

A. Mr. Beaderstadt.

Q. When did you have that conversation?

A. I started talking to him Monday night.

Q. Where?

A. He went to SmithKline Laboratories.

Q. And what did you tell him, and what did he tell you?

MR. BEADERSTADT: Objection, your Honor.

THE COURT: Sustained.

Jesus Christ. He has a right to talk to the witness before she testifies."

The prosecutor subsequently withdrew the objection, and defendant's attorney began to elicit the desired testimony. After defendant's attorney questioned Alfonso for a period of time about her conversation with the prosecutor, the prosecutor made another objection. The trial judge then sent the jury out, and the following exchange took place:

"MR. WILSON: Very quickly, your Honor, this is a violation of discovery. They didn't disclose that they went to this witness and obtained new information, that they talked to them by telephone and obtained new information.

I also want to make on the record [sic] that loud and clear the judge said Jesus Christ, and he said it right in this courtroom. I heard it over the microphone, and that I so strong object [sic] to that that the jury hears your Honor's voice.

THE COURT: I didn't. When did I say Jesus Christ?

MR. WILSON: You said it, Judge. You may not have known it, but you said it. And this—I'll imitate you. Jesus Christ. That's

what you said. And I call a mistrial, because if a jury hears a judge say that, not only is it improper for a judge to use the name of Jesus Christ in a courtroom as a swear word—

THE COURT: I don't believe I—

MR. WILSON: For a jury to hear that is an outrage. I heard it. It was clear. And I am not deaf, Judge. And I am not making this just to make an issue of it. It's an outrage.

MR. BEADERSTADT: Your Honor, the only documents that we—

THE COURT: Well, I—

MR. WILSON: I'm sorry if you didn't realize it.

THE COURT: I now have another problem. Did you hear me say it?

THE CLERK: I haven't heard anything except back and forth. I have not.

MR. WILSON: And I don't do it to cause you trouble, Judge, but you did say it. You said Jesus Christ, and it came over the microphone.

MR. BEADERSTADT: I didn't hear it.

THE CLERK: I didn't hear it."

Rather than rule immediately on defendant's motion for a mistrial, the trial judge resumed his discussion of defendant's attorney's discovery objection. The trial judge then ordered the jury to be brought back in, and the parties finished questioning Ms. Alfonso. The prosecutor then stated that its last witness would be present in the morning. The trial judge excused the jury, the parties argued over the admission of certain evidence, and the trial court recessed for the day. Defendant states in his brief that he obtained an immediate transcript of the proceedings to confirm that the judge had said "Jesus Christ," although no mention of this appears in the record.

When court reconvened on the following morning, before the jury was brought in, defendant's attorney voiced some evidentiary objections. The trial court reserved ruling on those objections. After the jury was present, the trial court made the following statement:

"Before we begin, ladies and gentlemen, the Court is going to—has something it wishes to say. And I'm sorry it comes at this point, but it does.

The Court has considered the last several days of the trial and what's been going on here. The Court has reached the conclusion that it has really never been in control of this trial. And having not been in control of the trial, the Court necessarily has had some problems, and this may or may not affect this trial and may affect the manner in which your decision is made. I cannot take that chance.

So, under the circumstances, a motion has been made for a mistrial.

* * *

The Court now declares a mistrial. And with that I will tell the jury you don't have to talk to anybody about anything that's gone on here, whether it be here to counsel on either side or the press or anybody else. It's up to you. You may talk to them if you wish. You don't have to if you don't want to. I will also tell you that this decision on my part came after much consideration last evening and this morning. You are dismissed."

The trial judge then recused himself from any further proceedings in the case and reassigned it to another judge.

Defendant subsequently moved to dismiss the indictment on the ground that a second prosecution would subject him to double jeopardy. The trial court denied defendant's motion. Defendant then took an interlocutory appeal to this court pursuant to Supreme Court Rule 604(f) (134 Ill. 2d R. 604(f)).

Defendant argues on appeal that, although it is highly improper and constitutes a lack of judicial temperament for a judge to swear in court, the conduct of the trial judge in this case did not constitute manifest necessity for a mistrial. Defendant further argues that, although he moved for a mistrial on the second-to-last day of the trial, that motion was not pending when the trial court granted the mistrial. Therefore, according to defendant, he did not consent to the mistrial. He also claims that his attorney had no opportunity to object to the mistrial because his attorney was so surprised by the trial judge's actions and because the trial judge left the courtroom before defendant's attorney had the opportunity to object to a mistrial.

The fifth amendment provides, in part, that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." (U.S. Const., amend. V.) The double jeopardy clause protects a defendant from "multiple punishments or repeated prosecutions for the same offense." *United States v. Dinitz* (1976), 424 U.S. 600, 606, 47 L. Ed. 2d 267, 273, 96 S. Ct. 1075, 1079; see also *People v. Stefan* (1992), 146 Ill. 2d 324, 333; *People v. Mauricio* (1993), 249 Ill. App. 3d 904, 906.

■ A second prosecution after a mistrial implicates not only a defendant's right to be free from double jeopardy but also his right to have his trial completed by a particular tribunal. (*Dinitz*, 424 U.S. at 606, 47 L. Ed. 2d at 273, 96 S. Ct. at 1079.) Therefore, where a trial court grants a mistrial *sua sponte*, a second prosecution is permissible only if "manifest necessity" existed for the mistrial. (*United States v.*

*Jorn* (1971), 400 U.S. 470, 481, 27 L. Ed. 2d 543, 554, 91 S. Ct. 547, 555; *People v. Oritz* (1992), 151 Ill. 2d 1, 11.) Manifest necessity only exists when " 'the ends of public justice would not be served by a continuation of the proceedings.' " *People v. Pondexter* (1991), 214 Ill. App. 3d 79, 83, quoting *Jorn*, 400 U.S. at 485, 27 L. Ed. 2d at 557, 91 S. Ct. at 557.

■ On the other hand, a defendant's request for, or acquiescence in, a mistrial will generally remove any bar to reprosecution unless the conduct of the judge or prosecutor was calculated to provoke the defendant to move for a mistrial. (*Oregon v. Kennedy* (1982), 456 U.S. 667, 679, 72 L. Ed. 2d 416, 426-27, 102 S. Ct. 2083, 2091; *People ex rel. Roberts v. Orenic* (1981), 88 Ill. 2d 502, 509; *People v. Gustafson* (1990), 194 Ill. App. 3d 910, 916.) " '[T]he Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice.' " (*People v. Mulcahey* (1993), 155 Ill. 2d 549, 557, quoting *United States v. Scott* (1978), 437 U.S. 82, 99, 57 L. Ed. 2d 65, 79, 98 S. Ct. 2187, 2198.) Furthermore, a defendant's failure to object to the trial court's *sua sponte* grant of a mistrial generally constitutes acquiescence in the mistrial. *People v. Camden* (1987), 115 Ill. 2d 369, 378-79.

■ There is no dispute that jeopardy attached in this case after the jury was empaneled. (*Crist v. Bretz* (1978), 437 U.S. 28, 36, 57 L. Ed. 2d 24, 32, 98 S. Ct. 2156, 2161; *People v. Wright* (1992), 234 Ill. App. 3d 880, 897.) Nonetheless, we conclude that the mistrial was attributable to defendant because defendant had moved for a mistrial on the previous day. The record reflects that defendant strenuously argued for a mistrial late in the day on September 16 because the trial judge had exclaimed "Jesus Christ" in front of the jury. At that time, the judge denied having said "Jesus Christ," and he made no attempt to rule on defendant's motion. Defendant's attorney neither pressed the trial court for a ruling nor withdrew his motion for a mistrial. The following morning, the trial judge ordered a mistrial. He claimed to have given the matter much thought over the previous evening. Although the judge did not specifically refer to the previous day's exclamation, he did refer to defendant's motion for a mistrial. He also referred to numerous problems that he felt had besieged the trial.

It is apparent from the trial judge's statements and from the timing of his declaration of the mistrial that the trial judge based his decision to declare a mistrial at least in part on defendant's earlier motion. We acknowledge that the trial court did not grant defendant's motion for a mistrial immediately. Rather, he considered the matter overnight and declared a mistrial the following morning. Very little

happened in the trial between defendant's motion and the trial court's declaration of a mistrial. This is not a case where the defendant moved for a mistrial and the trial judge declared a mistrial several days later on different grounds. (See *Lovinger v. Circuit Court of the 19th Judicial Circuit* (7th Cir. 1988), 845 F.2d 739, 743-44.) Furthermore, there is no suggestion that either the prosecutor or the trial judge intended to cause a mistrial. "Mere error by a trial court does not amount to 'judicial overreaching' so as to bar the reprosecution of a defendant who has requested a mistrial." (*Roberts*, 88 Ill. 2d at 511; see also *People ex rel. Mosley v. Carey* (1979), 74 Ill. 2d 527, 535.) Therefore, defendant's argument that he did not consent to the mistrial is unpersuasive. (See *United States v. Buljubasic* (7th Cir. 1987), 808 F.2d 1260, 1265.) Because we conclude that defendant requested the mistrial, we need not determine whether his failure to object to the mistrial constituted acquiescence in it. We also need not consider whether manifest necessity existed for the mistrial.

The judgment of the circuit court of McHenry County is affirmed.

Affirmed.

DOYLE and COLWELL, JJ., concur.