THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID BELLMYER, Defendant-Appellant.

Third District   No. 3—00—0419

Opinion filed July 3, 2001.—Rehearing denied August 3, 2001.

HOLDRIDGE, J., dissenting.

Carrie B. Marche (argued), of State Appellate Defender's Office, of Ottawa, for appellant.

Marshall E. Douglas, State's Attorney, of Rock Island (John X. Breslin and Gary F. Gnidovec (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McDADE delivered the opinion of the court

David Bellmyer participated in a bench trial which commenced on February 29, 2000. The bench trial was continued to April 7, 2000, *sua sponte*, to allow the parties to produce additional information requested by the court. Although the parties had presented the judge with the supplemental information, he ruled at the continued trial that the stipulations were not sufficient for him to make a decision. The court offered the defendant the opportunity to withdraw his waiver of jury trial, but the defendant refused to do so.

On April 12, 2000, the defendant filed a motion to compel the verdict. The State raised no objection to the defendant's motion and agreed that all available evidence had been presented to the court. Defendant's motion was denied on April 13, 2000. At that time, the defendant filed a motion to dismiss based on double jeopardy. The State objected to this motion, and it was denied. On May 8, 2000, defendant moved for reconsideration of his motion to dismiss, which also

was denied. The defendant appeals from the denial of the motion to dismiss based on double jeopardy.

## FACTS

The evidence presented at the stipulated bench trial showed that at all relevant times the defendant was living with his parents, George and Waltrud Bellmyer, his daughter, and his girlfriend. Defendant's girlfriend would testify that the defendant had an argument with his parents on January 23, 1999. The evidence would also show that the defendant had been cleaning the gun on that day.

Defendant's mother would testify that the defendant had an argument with his girlfriend early in the day on January 24, 1999. Defendant's brother would testify that he had been at his parents' home earlier in the day and that the defendant was upset at that time. Defendant's mother, girlfriend, and daughter would testify that the defendant was angry because he had misplaced a gun, which he eventually found. The defendant had begun pointing the gun at his parents and girlfriend, but not at his daughter. In fact, he had told his daughter to go to the basement.

When defendant hit his father with the gun, his mother, girlfriend, and daughter fled through a window to the defendant's brother's house across the street. The daughter told the brother that the defendant was beating up her grandfather. When the mother and girlfriend arrived at the brother's house, the police were called.

When the police arrived at the home of the parents, they tried unsuccessfully to talk the defendant out of the house. They were eventually able to gain entry to the home, where they found the father shot in the entryway. He was dead. The defendant was sitting on a couch in his bedroom with a Bersa .380 handgun beside him. An autopsy disclosed that the father had died as a result of three gunshot wounds to the head. It was also stipulated that the projectiles found during the autopsy came from the Bersa gun found next to the defendant when the police arrived at the scene.

When the defendant was taken to the station, he was read his *Miranda* rights, and he invoked his right to counsel. The defendant first appeared before the court on January 25, 1999. At that time, he was asked to sign a form that advised him that he had a right to an attorney, warned him of the possibility of trial *in absentia*, set bond, and informed him of the date of his preliminary hearing. The defendant would not sign this form, indicating that he did not understand it. On January 26, 1999, the State filed, and the court granted, a motion for a fitness hearing to determine if the defendant was fit to plead or stand trial.

The fitness hearing was conducted on March 5, 1999. At that time, Dr. Eric Ritterhoff testified that he had seen the defendant seven to eight times since his incarceration. He had at first found the defendant to be "in the throes of psychosis." However, Dr. Ritterhoff testified that, on his last visit, the defendant was calm, his face was relaxed, he had put on some weight, he maintained direct eye contact, and he was not hearing voices. Dr. Ritterhoff concluded that the defendant was not fit to plead or to stand trial at that time, but that he would be fit within one year.

Dr. Ritterhoff submitted a second report to the court on June 7, 1999. At that time he advised that the defendant's mental state was improving, but he continued to be unfit to stand trial. On September 1, 1999, the defendant was found fit to stand trial.

On November 30, 1999, the defendant filed notice that he intended to raise an affirmative defense of insanity. Defense counsel had the defendant examined by Dr. Chapman, who found that the defendant was insane at the time of the shooting. Given this report, the State sought a second opinion from Dr. Witherspoon. Dr. Witherspoon also found that the defendant was insane at the time he shot his father. On January 6, 2000, the State and the defendant informed the court that because both of their experts believed the defendant was insane at the time of the offense, the parties would proceed by a stipulated bench trial based on these reports.

On February 29, 2000, following the presentation of evidence by stipulation, the court heard closing arguments. The State argued that despite the reports submitted by Dr. Chapman and Dr. Witherspoon, the court should find the defendant either guilty or guilty but mentally ill. It was the State's contention that the facts that the defendant had been cleaning his gun and had argued with his parents and his girlfriend the night before the shooting showed that the incident was planned. The State further argued that telling his daughter to go to the basement and not pointing the gun at her demonstrated that the defendant knew his actions were wrong.

In its closing argument, the defense emphasized that the reports of both doctors concluded that the defendant was insane at the time of the crime; that both doctors found that the defendant suffered from the same mental condition—a "schizoaffective disorder, bi-polar type"; and that both agreed that at the time of the crime, the defendant could not appreciate the criminality of his conduct due to his mental health problems.

After hearing the closing arguments, the court noted that it did not have any problems with the qualifications of Dr. Chapman but did have some questions regarding the findings and qualifications of Dr.

Witherspoon. The court also expressed concern about the lack of evidence regarding how the defendant acted prior to and after the incident. The court then asked the State to submit additional information regarding the defendant's behavior from the time of the killing until the time of his arrest and the appointment of the public defender. The matter was continued until April 7, 2000.

At the hearing on April 7, 2000, the judge complained that, despite his receipt of the additional information, the stipulations and evidence were still not sufficient for him to make a decision because they did not allow him to judge the credibility of the witnesses. Therefore, the judge refused to enter a ruling and offered the defendant the opportunity to withdraw his waiver of jury trial, which the defendant refused.

On April 12, 2000, the defendant filed a motion to compel the verdict, which was heard the following day. The State had no objection to the motion and agreed that the stipulations contained all the available information and that nothing would be added by cross-examining the witnesses. Both parties agreed that they could not provide the court with any additional evidence. The trial judge expressed his belief that much more could be brought out at trial and denied the motion to compel the verdict.

At the same hearing, the defendant filed a motion to dismiss the charges against him based on a theory of double jeopardy. The State objected to this motion, and the trial court denied it. On May 8, 2000, the defendant filed a motion to reconsider the motion to dismiss, which was denied. The defendant appeals from the denial of the motion to dismiss.

## ANALYSIS

Defendant raises only one issue on appeal: whether the trial court erred in denying his motion to dismiss based on double jeopardy where the parties had completed a stipulated bench trial and the court refused to enter a verdict. This is a case of first impression which involves the application of law to uncontested facts. We, therefore, review the decision of the trial court *de novo*. *In re D.G.*, 144 Ill. 2d 404, 408-09, 581 N.E.2d 648, 649 (1991).

●1 The double jeopardy clause of the fifth amendment protects the criminal defendant from multiple prosecutions for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969). The Illinois Constitution also prohibits placing a criminal defendant in jeopardy twice. Ill. Const. 1970, art. I, § 10. Finally, Illinois statutory law prohibits trying a criminal defendant for the same offense more than once. 720 ILCS 5/3—4 (West 2000).

The basic policy behind the double jeopardy clause is to ensure that the State, with all its power and resources, is not allowed to make repeated attempts to convict an individual for the same alleged offense. To determine whether a retrial would violate the defendant's right to be free from double jeopardy, the reviewing court must determine whether or not the defendant was placed in jeopardy during the first proceeding and whether he can be retried. *People v. Camden*, 115 Ill. 2d 369, 376, 504 N.E.2d 96, 99 (1987).

The defendant argues that in this case he was placed in jeopardy when the stipulated bench trial began, and, therefore, any retrial would violate his right to be free from double jeopardy. In support of this argument, the defense argues that the State carried its burden of proving beyond a reasonable doubt that the defendant committed all elements of the offense. Then, the burden shifted to the defendant to prove, by clear and convincing evidence, that he was insane at the time he shot his father. In order to meet their respective burdens, the parties had agreed to numerous stipulations, including statements made by eyewitnesses to the incident, police officers who arrested the defendant, police officers who had arrested the defendant a few days prior to the incident on an unrelated charge, and jail personnel who interacted with the defendant while he was in the county jail.

The stipulations also included the coroner's report, which showed the defendant's father had died of multiple gunshot wounds to the body. Additionally, the parties had stipulated to numerous reports regarding the defendant's mental health, including those of Dr. Chapman and Dr. Witherspoon. Both of these reports concluded that the defendant was insane at the time of the offense. The court was also presented with doctors' reports regarding the defendant's mental health while being treated in jail. In addition, as the trial court noted, there was no evidence presented that the defendant was sane at the time of the offense.

•2 The United States Supreme Court has consistently held that jeopardy attaches after defendant is put to trial before the trier of fact, whether the trier of fact be a jury or a judge. See, *e.g., Serfass v. United States*, 420 U.S. 377, 43 L. Ed. 2d 265, 95 S. Ct. 1055 (1975). In a nonjury trial, jeopardy attaches "after an accused has been indicted, arraigned, has pleaded, and the court has begun to hear the evidence." *McCarthy v. Zerbst*, 85 F.2d 640, 642 (10th Cir. 1936). In *Wade v. Hunter*, 336 U.S. 684, 93 L. Ed. 974, 69 S. Ct. 834 (1949), the Supreme Court noted that a defendant may be subject to jeopardy in a bench trial even when the judge fails to enter a verdict.

In further support of his double jeopardy argument, the defendant has contended that the judge essentially found that there was evi-

dence showing that the defendant was insane at the time of the offense, but he was still demanding some evidence from the State that could support its claim of the defendant's culpability. The State reiterated the absence of any additional evidence.

Defendant argues that the court's request was inappropriate because a bench trial is limited to the record made during the trial (*People v. Nelson*, 58 Ill. 2d 61, 317 N.E.2d 31 (1974)), and because a trial judge may not conduct his own investigation into the case. *People v. Harris*, 57 Ill. 2d 228, 314 N.E.2d 465 (1974). Ultimately, the defendant argued, by rejecting all the stipulations and ordering more evidence to be presented, the judge was essentially finding that the State had not proven its case and should have entered a verdict of not guilty.

In response to these arguments, the State suggests that a stipulated bench trial is akin to a guilty plea. However, unlike a guilty plea, whereby the defendant waives all nonjurisdictional errors and defects, a stipulated bench trial allows the defendant to preserve his or her right to appeal pretrial objections or issues. *People v. Horton*, 143 Ill. 2d 11, 570 N.E.2d 320 (1991). The State acknowledged that with a stipulated bench trial there is a remote, theoretical possibility that the defendant might be acquitted, but contended that the reality is that factual guilt is a foregone conclusion, and the defendant will be convicted by the trial judge. *People v. Gonzalez*, 313 Ill. App. 3d 607, 730 N.E.2d 534 (2000). The State also submitted that a stipulated bench trial is tantamount to a guilty plea, but gives the defendant an opportunity to present and preserve a defense. *Horton*, 143 Ill. 2d at 22, 570 N.E.2d at 325.

●3 The State then argues that the protections afforded by the double jeopardy clause of the United States Constitution are not implicated unless the defendant is put in jeopardy, and the people claim that this defendant was not. The State cites *North Carolina v. Pearce*, 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2070 (1969), for the principle that the guarantee against double jeopardy affords individuals three distinct types of protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. The State claims that none of these guarantees is implicated by the facts in this case. For the reasons that follow, we reject the State's claim.

●4 In Illinois, jeopardy attaches in a jury trial when the jury is empaneled and sworn. *People v. Daniels*, 187 Ill. 2d 301, 718 N.E.2d 149, 156 (1999). In a bench trial, however, jeopardy does not attach until the first witness is sworn and trial judge begins to hear evidence. *People v. Ortiz*, 151 Ill. 2d 1, 9, 600 N.E.2d 1153, 1156 (1992). Finally,

jeopardy attaches to a guilty plea when the guilty plea is accepted by the trial judge. *People v. McCutcheon*, 68 Ill. 2d 101, 106, 368 N.E.2d 886, 888 (1977). The issue of when jeopardy attaches during a stipulated bench trial has not been addressed by the Illinois courts and is, therefore, a matter of first impression for this court.

●5 In this case, the defendant clearly raised the defense of insanity prior to agreeing to a stipulated bench trial. Based on that fact, the defendant plainly was not waiving his right to a bench trial on the issues, but he was agreeing that the trial could be expedited by stipulating to the factual evidence that would be presented. Thus, the only issue for the court to decide would be the defendant's level of culpability in light of his defense. On that basis, this stipulated bench trial appears to be significantly more akin to a standard bench trial than to a guilty plea.

As previously indicated, jeopardy attaches in a bench trial when the first witness is sworn and the trial judge begins to hear evidence. *People v. Ortiz*, 151 Ill. 2d 1 (1992). Here the stipulations consisted of the testimony that would have been elicited from the witnesses when sworn at trial. Since the trial judge did hear all of the stipulated evidence, the parties agreed that all available evidence was before the court, and the court heard closing arguments by counsel, it would appear that jeopardy did in fact attach in this case.

The State argues that even if jeopardy did attach when the stipulations were submitted to the trial judge, the defendant's retrial after the court's rejection of those stipulations is not barred by double jeopardy. Analogizing this situation to that of a mistrial, the State contends that, even though double jeopardy is a constitutional benefit for defendants, the government is entitled to the resolution of the case by a verdict. Since jeopardy does not attach when a mistrial is declared (*People v. Fisher*, 259 Ill. App. 3d 445, 632 N.E.2d 689 (1994)), the prohibition against placing defendant in double jeopardy will not preclude a second trial if the trial judge declares a mistrial. The State asks this court to find the trial court's refusal to enter a verdict on the stipulated evidence to be the functional equivalent of a "hung jury" resulting in a mistrial.

This argument is interesting and certainly has merit in the case where there is a hung jury. However, a judge is one person and cannot, therefore, be "hung." Absent some misconduct by the parties calling for a retrial, a judge in a bench trial is required to make a decision. In this case, both the defendant and the State agreed that there was no additional pertinent evidence that could be supplied to the court. Therefore, the court, by agreement of the parties, and particularly by concession of the State, had all relevant evidence before it. Since no

additional evidence supporting culpability was available, the court should have rendered a decision. It's failure to do so cannot negate the attachment of jeopardy, and the State does not get another shot at this defendant.

## CONCLUSION

Based on the foregoing discussion, the judge's ruling on the motion to dismiss based on double jeopardy was in error, and is reversed.

Reversed.

SLATER, J., concurs.

JUSTICE HOLDRIDGE, dissenting:

I respectfully dissent. I would find that the defendant's stipulated bench trial was tantamount to a guilty plea and as the judge had not accepted the stipulations, jeopardy had not attached. I would therefore affirm the trial court's denial of the motion to dismiss and would remand the matter for further proceedings.

It is well settled that where a defendant in a stipulated bench trial stipulates only to the existence of evidence, the proceeding is not tantamount to a guilty plea. *People v Horton*, 143 Ill. 2d 11, 22 (1991). However, if the defendant stipulates not just to the existence of the evidence but to the sufficiency of that evidence to convict, the stipulation is the equivalent of a guilty plea. *People v. Cunningham*, 286 Ill. App. 3d 346 (1997). In the matter *sub judice*, the defendant, through counsel, unequivocally stipulated "not only to the facts, but to the sufficiency of the evidence to convict" of the charge of murder. Thus, defendant's stipulations were tantamount to a guilty plea.

As the majority notes, jeopardy attaches to a guilty plea when the plea is accepted by the trial judge. *People v. McCutcheon*, 68 Ill. 2d 101 (1977). Since the defendant's stipulated bench trial was tantamount to a guilty plea, and the trial court rejected the stipulations, I would find that jeopardy did not attach. Since jeopardy had not yet attached when the trial court rejected the stipulations, the court properly denied defendant's motion to dismiss.